Kelly BROCKMANN, Appellant,

v.

Robert BROCKMANN, Appellee.

No. 02A04–1003–DR–246.

Court of Appeals of Indiana.

Dec. 17, 2010.

Rehearing Denied Feb. 16, 2011.

Eric E. Snouffer, Snouffer & Snouffer, Fort Wayne, IN, Attorney for Appellant.

Cornelius B. (Neil) Hayes, Andrea R. Trevino, Bobilya & Reidy, Fort Wayne, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Kelly Brockmann ("Mother") appeals the trial court's order compelling arbitration of a petition to modify custody filed by Robert Brockmann ("Father"). We reverse and remand.

### Issue

The dispositive issue before us is whether the trial court erred in concluding that Father's petition to modify custody had to be submitted to arbitration, pursuant to an earlier agreement signed by the parties.

### Facts

The parties were married in 2000, and Mother filed for divorce in 2005. One child, A.B., was born during the marriage. In January 2007, the trial court entered a provisional order regarding child custody, which was amended in April 2007. In June 2007, Father filed a petition to modify legal custody of A.B. The trial court never acted upon this petition. In February 2008, the trial court entered a final decree of dissolution, in which it incorporated its earlier child custody order; the decree made no mention of Father's petition to modify legal custody.

In June 2008, Father requested a hearing on his June 2007 petition for modification of legal custody.[1] Later that month, the parties agreed to the scheduling of two separate hearings: one, to be held in August 2008, to address where A.B. would attend school that year; and another, to be held in October 2008, to address Father's petition to modify.

On August 11, 2008, at the parties' request, the trial court entered an "Order Approving Family Law Arbitration." App. p. 59. The order stated in part, "The parties will submit issues of dispute to

1. Father never filed a new or different petition.

Family Law Arbitration in accordance with the Family Law Arbitration Statute...." *Id.* On August 26, 2008, the parties submitted a copy of their "Agreement to Arbitrate" to the trial court. *Id.* at 85. The agreement stated in part, "the parties reiterate that all issues of dispute shall be submitted to Family Law Arbitration. The current issue of dispute for determination by the Arbitrator is the following: A. Where the parties' child will be enrolled in school." *Id.* at 86. No other "issues of dispute" were identified in the agreement. The agreement also stated, "The parties acknowledge that in the absence of an agreement in writing to repudiate this Agreement, it is valid, irrevocable, and enforceable until judgment is entered in such matters in which arbitration has occurred." *Id.*

Also on August 26, 2008, the arbitrator filed with the trial court his findings and conclusions regarding A.B.'s schooling. On September 4, 2008, the trial court entered judgment on these findings and conclusions. The previously-scheduled October hearing to address Father's petition to modify legal custody was never held, for reasons that are not clear in the record, nor was the petition ever considered by the arbitrator. In the spring of 2009, the trial court held hearings and entered a ruling on a property equalization payment issue disputed by the parties.

The trial court later scheduled a hearing for February 23, 2010, to address "all pending matters...." *Id.* at 4. At that hearing, the only matter discussed was whether Father's still-unresolved petition for modification of legal custody had to be submitted to arbitration. After the hearing, the trial court entered an order finding that the August 26, 2008 arbitration agreement bound the parties "to continue with arbitration throughout the pendency of this action which will not conclude until

the parties' child has completed college which could go on 20 or more years." *Id.* at 57–58. The trial court concluded its order by stating, "Because of the novelty of the matter presented, the Court finds this should and shall be treated as a final decision so as to allow immediate appeal should [Mother] desire to appeal this decision." *Id.* at 58.

Mother timely initiated an appeal from this ruling. Upon receipt of this appeal, this court issued a rule to show cause why the appeal should not be dismissed because of an apparent lack of a final judgment. Mother responded with authority holding that an order compelling arbitration is a final appealable judgment; Father did not respond to Mother's response. This court discharged its rule to show cause and has allowed the appeal to proceed.

### Analysis

■ We first address Father's contention that, despite our earlier ruling allowing this appeal to proceed, there is no final appealable judgment in this case and Mother's appeal ought to be dismissed for failure to comply with the rules regarding interlocutory appeals. Although it is true we may revisit procedural rulings made by this court before a case is fully briefed, we generally decline to do so in the absence of clear authority establishing that the previous ruling was erroneous as a matter of law. *Oxford Fin. Group, Ltd. v. Evans,* 795 N.E.2d 1135, 1141 (Ind.Ct.App.2003). Father has not met this burden.

■ In Mother's response to our rule to show cause why her appeal should not be dismissed, she directed this court to *Evansville–Vanderburgh School Corporation v. Evansville Teachers Association,* 494 N.E.2d 321 (Ind.Ct.App.1986). In that case, we addressed whether an order compelling arbitration was a final appealable order. After considering opposing points

of view from other jurisdictions, we held, "[a]n order compelling arbitration is an appealable final order in an action solely for that purpose because such an order has fully decided the issue before the court." *Id.* at 323–24.

The *Evansville* case has never been overruled, and in fact has been cited with approval on several later occasions. *See, e.g., N. Indiana Commuter Transp. Dist. v. Chicago Southshore & S. Bend R.R.,* 793 N.E.2d 1133, 1135 (Ind.Ct.App.2003), *trans. denied; Chesterfield Mgmt., Inc. v. Cook,* 655 N.E.2d 98, 100 (Ind.Ct.App. 1995), *trans. denied.* Father's brief contains no argument as to how or why *Evansville* either was wrongly decided, or is distinguishable from the present case, even though he was on notice that Mother had relied upon this case in previously avoiding dismissal of her appeal. In the absence of such argument, we decline to revisit our earlier decision allowing Mother's appeal to proceed.[2]

■ We now turn to whether the trial court erred in compelling arbitration, apparently not just to address Father's petition to modify legal custody, but any issue related to A.B. that might arise in the coming years and decades. The arbitration agreement here arose under the auspices of the Family Law Arbitration Act ("FLAA"), Indiana Code Chapter 34–57–5, which was enacted in 2005. No appellate court in this state has yet had the occasion to address the FLAA. However, we see no reason not to glean some guidance from principles that have been established regarding arbitration generally.[3]

■ Under Indiana law, a party seeking to compel arbitration has the burden of demonstrating the existence of an enforceable arbitration agreement. *Showboat Marina Casino P'ship v. Tonn & Blank Constr.,* 790 N.E.2d 595, 597–98 (Ind.Ct. App.2003). We apply ordinary contract interpretation principles when determining whether the parties have agreed to arbitrate a dispute. *Id.* at 598. Generally, when construing arbitration agreements, doubts are resolved in favor of arbitration, and parties are required to arbitrate all matters, not explicitly excluded, that reasonably fit within the language of the agreement. *Id.* However, parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate, and arbitration agreements will not be extended by construction or implication to cover any other matters. *Id.*

■ The general rules of contract interpretation are that, unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *Shorter v. Shorter,* 851 N.E.2d 378, 383 (Ind.Ct.App.2006). Clear and unambiguous terms in a contract are deemed conclusive, and we will not construe an unambiguous contract or look to extrinsic evidence, but will merely apply the contractual pro-

2. We also note, judging by the language at the conclusion of the order compelling arbitration, that the trial court apparently intended to treat the order as a final judgment. The trial court, however, failed to use the "magic language" of Trial Rule 54(B) for certifying an order as a final judgment, i.e., it did not expressly determine that there was no just reason for delay and direct entry of judgment. *See Cincinnati Ins. Co. v. Davis,* 860 N.E.2d 915, 921 (Ind.Ct.App.2007) (holding that order stating "as there now remain no pending issues, this shall be considered a final, appeal-able order" did not meet the requirement of Trial Rule 54(B)).

3. Ironically, however, the legislature wishes to limit the precedential effect of our decision today only to family law arbitration cases. *See* Ind.Code § 34–57–5–1(a) ("An appellate court opinion interpreting or construing this chapter has precedential value only for family law arbitrations and does not apply to any other type of arbitration.").

visions. *Id.* Terms are not ambiguous merely because the parties disagree as to the proper interpretation of those terms. *Id.* By contrast, contract terms may be ambiguous if they are susceptible to more than one reasonable interpretation. *Id.* If a written instrument is ambiguous, we may consider all relevant evidence, including extrinsic evidence, to discern the contract's meaning. *Id.* Our ultimate goal is to determine the parties' intent in drafting the contract, and to effectuate that intent. *Id.* at 383–84.

The FLAA permits a broad range of family law matters to be submitted to arbitration, including dissolution actions in their entirety, actions to establish child support, custody, or parenting time, or petitions to modify any decree, judgment, or order entered under Indiana Code Title 31. *See* Ind.Code § 34–57–5–2(a). Thus, Father's petition to modify legal custody of A.B. would qualify as a matter that could be arbitrated. Whether the parties actually agreed to arbitrate that matter, however, is a different issue.

We first conclude that the arbitration agreement is ambiguous. The agreement does state that the parties were agreeing to arbitrate "all issues of dispute...." App. p. 86. It then immediately states, however, "The current issue of dispute for determination by the Arbitrator is the following: A. Where the parties' child will be enrolled in school." *Id.* Reasonable persons could differ as to whether the agreement was intended to apply to any possible issue that might arise between the parties concerning A.B. for the rest of her minor and possibly college-age life, or was only intended to apply to the specific, immediate issue of A.B.'s schooling. Additionally, other matters possibly could arise between Mother and Father aside from issues regarding A.B. In fact, it does appear that in May 2009, the trial court ruled on a matter regarding a property equalization payment that had *not* been submitted to arbitration. Given this action, it is unclear whether the arbitration agreement truly was intended to apply to "*all* issues of dispute" between the parties. *Id.* (emphasis added).

After considering the language of the agreement, along with relevant extrinsic evidence, we conclude that the parties did not intend for Father's petition for modification of legal custody to be submitted to arbitration, or to otherwise submit to arbitration any and all possible future disputes that might arise between the parties. When the agreement was executed, there were two disputed issues before the trial court regarding A.B. The agreement only explicitly referred to one of those issues and makes no mention of the other, i.e. the petition to modify legal custody. If the parties had intended to submit that issue to arbitration, it is unclear why it would not have been specifically mentioned in the arbitration agreement.

Additionally, the agreement states that it is "valid, irrevocable, and enforceable until judgment is entered in such matters in which arbitration has occurred." *Id.* This closely parallels the language of Indiana Code Section 34–57–5–3, which provides that an arbitration agreement is valid, irrevocable, and enforceable "until the judgment is entered in the matter in which arbitration has taken place." Although the agreement refers to "matters" in the plural, while the statute refers to "matter" in the singular, the fact remains that only one "matter" ever has been submitted to arbitration in this case and only one judgment has been entered. We also believe that the statute's reference to "matter" in the singular, after which an arbitration agreement may be terminated, is indicative of legislative intent that such agreements in the family law realm ad-

dress specific disputed issues, rather than permitting open-ended agreements to encompass any future issues that may arise between the parties, unless of course the agreement clearly states to the contrary. The agreement here, however, does not clearly indicate an intent by the parties to arbitrate all possible future issues.

Finally, we note that the purpose of arbitration is " 'to entertain consideration of disputed matters and to reach an acceptable decision and award, without having to undertake often ponderous and costly judicial proceedings.' " *Polinsky v. Violi,* 803 N.E.2d 684, 688–89 (Ind.Ct.App. 2004) (quoting *School City v. E. Chicago Fed'n of Teachers,* 622 N.E.2d 166, 169 (Ind.1993)); *see also Preston v. Ferrer,* 552 U.S. 346, 357, 128 S.Ct. 978, 986, 169 L.Ed.2d 917 (2008) ("A prime objective of an agreement to arbitrate is to achieve 'streamlined proceedings and expeditious results.' ") (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth,* 473 U.S. 614, 633, 105 S.Ct. 3346, 3357, 87 L.Ed.2d 444 (1985)). If, indeed, the parties had intended to arbitrate the question of Father's petition to modify legal custody, it makes very little sense, and is completely incompatible with the basic purpose of arbitration, that the arbitrator did not address that petition shortly after the arbitration agreement was executed, or ever. This left Father's petition unaddressed for one-and-a-half years after the arbitration agreement was executed, until the February 2010 hearing. All in all, that petition now has lingered in limbo for three and one-half years, which is undesirable where issues involving children are concerned. If it was intended that arbitration was to resolve the petition, it should have been addressed over two years ago. Likewise,

if there was disagreement between the parties on whether that issue should have been arbitrated, that disagreement also should have been brought to the trial court's attention and resolved long before it was.

In sum, although we recognize a general policy in Indiana towards favoring arbitration, we will not construe an arbitration agreement to apply to matters not clearly delineated by the agreement. *See Showboat Marina Casino,* 790 N.E.2d at 598. The agreement here did not clearly state that it was to apply to Father's petition to modify legal custody, or that it was to apply to any possible dispute that might arise between the parties for an indefinite period of time. The trial court erred in concluding otherwise.[4]

### Conclusion

We reverse the trial court's order compelling the parties to submit the matter of Father's petition for modification of custody to arbitration, and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BAKER, C.J., and VAIDIK, J., concur.

---

4. Because of our resolution of this issue, we need not address Mother's contention that the arbitrator assigned to her and Father should have been removed due to potential bias against her.