**Andrew KESLING, Appellant–Petitioner,**

v.

**Dorothy KESLING, Appellee–Respondent,**

**and**

**Adam Kesling and Emily Kesling, Appellees–Intervenors.**

No. 46A03–1103–DR–77.

Court of Appeals of Indiana.

Oct. 6, 2011.

Rehearing Denied Dec. 15, 2011.

Thomas G. Burroughs, Ronald G. Sentman, Katz & Korin, PC, Indianapolis, IN, Attorneys for Appellant.

Shaw R. Friedman, Friedman & Associates, P.C., La Porte, IN, Robert W. Wright, Dean–Webster, Wright & Kite, LLP, Indianapolis, IN, Attorneys for Appellees Adam and Emily Kesling.

## OPINION

BAILEY, Judge.

### Case Summary

Andrew Kesling ("Husband") appeals a judgment approving an arbitrator's award that required him to make a shareholder distribution from funds of a closely-held corporation as requested by Emily Kesling and Adam Kesling (collectively, "Siblings") after Siblings intervened in the dissolution of Husband's marriage to Dorothy Kesling ("Wife"). We reverse.

### Issue

Husband raises three issues for review, one of which we find dispositive: whether the Arbitrator exceeded her authority.

### Facts and Procedural History

On September 15, 2005, Wife petitioned to dissolve her marriage to Husband. On August 1, 2007, Wife filed a Motion for Joinder of Persons Needed for Just Adjudication, seeking to join Siblings as parties to the dissolution action. The motion was denied.

On August 6, 2007, Siblings filed a Motion to Intervene, alleging that Husband as majority shareholder of Encore II Enterprises, LLC ("Encore II") had, without providing notice of the closing date to Wife or Siblings, sold a South Haven, Michigan hotel owned by Encore II. The Siblings further alleged that Husband sought to use the proceeds to repay a loan made to Encore II from Encore I Enterprises, LLC ("Encore I") rather than make shareholder distributions to Siblings and divide Husband's shareholder distribution with Wife. The Siblings requested that they be permitted to intervene in the dissolution action "for the limited purpose of providing for an accounting and distribution of such sale proceeds as per Encore II's operating agreement and the July 11, 2007 agreement of Encore II's counsel." (App.31.) After a hearing conducted on August 10, 2007, the dissolution court granted Siblings "the right to intervene for the limited purpose of seeking injunctive relief as minority shareholders in net proceeds realized from the sale of a certain hotel which are presently commingled with marital assets until such time as the marital property interests in those proceeds can be determined vis-a-vis their interests as minority shareholders." (App.11.)

On October 10, 2007, the dissolution court ordered Husband to make distribution of funds "in such amount and at such time as is consistent with the Motion of Encore II Enterprises, LLC." (App.52.) Contemporaneously, the order for inter-

vention and a temporary restraining order were dissolved.

On July 2, 2008, Siblings, as minority shareholders of Encore I, filed a second Motion to Intervene, "for the limited purpose of protecting their rights as shareholders and preventing the [Internal Revenue Code] 1031 land exchange with regard to the Encore I." (App.53.) Siblings alleged that Husband had executed a Letter of Intent to sell a hotel in Michigan City, Indiana (owned by Encore I) and sought to accomplish a non-taxable transfer through a "1031 exchange" and thereby avoid distribution of proceeds due Siblings and Wife. (App.54.) Siblings advised the dissolution court that they had previously intervened on a "different issue." (App.54.) On July 7, 2008, the dissolution court granted the intervention of Siblings, "for the limited purpose of providing for an accounting and distribution of any sale proceeds related to Encore I and regarding the disputed issue of the 1031 land exchange proposed by the Letter of Intent." (App.58.)

On May 21, 2009, Husband and Wife filed a stipulation for the appointment of an arbitrator. Husband moved to terminate the intervention; after a hearing, the motion was denied. The dissolution court issued an order stating that Siblings "should have been included in the original referral for arbitration and they are now made parties to be included in the arbitration of this matter for the limited purpose and scope of their narrow or limited interest in the issues they have an interest in and which were the subject of the original

reason for intervention in this matter." (App.139–40.) Husband's subsequent motion to terminate interlocutory intervention was also denied.

On August 23, 2010, Husband, Wife, and Siblings appeared before the arbitrator. Husband and Wife, by their respective counsel, advised the arbitrator that they had reached settlement with regard to their custody, child support, and property division issues.[1] Husband further advised the arbitrator that his proposal for the 1031 exchange had been withdrawn and thus the issue was moot. He moved to terminate the arbitration. The Siblings responded that they were entitled, by trial court order, to an accounting of the funds distributed as a result of the October 10, 2007 court order.

The arbitrator denied the motion to terminate arbitration and the Siblings presented evidence regarding their contention that incorrect shareholder percentages had been used in the 2007 distribution.[2] The arbitrator found that Husband had received an overpayment and ordered him to refund $47,077.73 to Encore I and to distribute $53,002.89 to Emily.[3] The dissolution court entered judgment upon the arbitration award and this appeal ensued.

## Discussion and Decision

 The arbitration agreement herein arose under the auspices of the Family Law Arbitration Act ("the FLAA"), Indiana Code Chapter 34–57–5. "This chapter is applicable only to the family law matters described in section 2 of this chapter and does not apply to any other type of

---

1. The details of the agreement remained confidential. However, counsel advised the arbitrator that any corporate liabilities were the responsibility of Husband.

2. Siblings held lesser percentages of the stock in Encore II as compared with their stock in Encore I. The difference was greater for Emily than for Adam.

3. The arbitrator found that Adam had been overpaid the sum of $1,834.85 but did not order repayment, instead observing that Husband had authority as majority shareholder to pursue repayment from Adam.

arbitration." Ind.Code § 34–57–5–1(a). Pursuant to Indiana Code Section 34–57–5–2(a):

In an action:

(1) for the dissolution of a marriage;

(2) to establish:

(A) child support;

(B) custody; or

(C) parenting time; or

(3) to modify:

(A) a decree;

(B) a judgment; or

(C) an order

entered under IC 31; both parties may agree in writing to submit to arbitration by a family law arbitrator.

As such, "the FLAA permits a broad range of family law matters to be submitted to arbitration, including dissolution actions in their entirety, actions to establish child support, custody, or parenting time, or petitions to modify any decree, judgment, or order entered under Indiana Code Title 31." *Brockmann v. Brockmann*, 938 N.E.2d 831, 835 (Ind.Ct.App. 2010), *trans. denied.* The FLAA indicates a legislative intent that agreements to arbitrate in the family law realm address specific disputed issues, as opposed to permitting open-ended agreements to encompass future issues that may arise between the parties, absent an arbitration agreement clearly stating such an intent to arbitrate all possible future issues. *Id.* at 835–36. Accordingly, "parties are only bound to arbitrate those issues that by clear language they have agreed to arbitrate, and arbitration agreements will not be extended by construction or implication to cover any other matters." *Id.* at 834.

Here, the dissolution court purportedly expanded the issues for arbitration to include disputes between Husband and Siblings in their roles as fellow shareholders in two closely-held corporations. It is ap-parent, considering Husband's repetitive motions to the dissolution court and to the arbitrator, that he did not consent to arbitration of such breadth. Ultimately, however, although Husband and Wife had resolved all issues of child custody, child support, and property division underlying their original agreement to arbitrate, there ensued an arbitration of a dispute sounding in breach of contract or breach of fiduciary duty. The shareholder dispute was neither within the purview of the FLAA or the arbitration agreement of the spouses.

█ Furthermore, it is well settled that an intervenor takes the case as he finds it and is not permitted to litigate matters already determined in a case. *State Farm Mut. Auto. Ins. Co. v. Hughes*, 808 N.E.2d 112, 116 (Ind.Ct.App.2004). Here, the first intervention (occasioned by the sale of the South Haven hotel) had been dissolved when the Siblings came to the dissolution court seeking a second intervention (occasioned by the proposed like-kind exchange involving a Michigan City hotel). Consistent with *State Farm* and the procedural posture in which they stood, the Siblings advised the dissolution court that their previous intervention had involved "a different issue." (App.54.) They would subsequently retreat from that position, arguing that the 2007 dissolution court order for distribution was not a final order and that they were entitled to arbitration of their contention that there had been accounting error and there existed a need for a corrective shareholder distribution. Nonetheless, regardless of the alleged inaccuracy of accounting methodology, and whether it arose from negligence, deception, or agreement, the discontent of the minority shareholders could not serve as the basis for expanding an order for arbitration under the FLAA. Moreover, they could not resurrect an issue upon interven-

ing in the dissolution action a second time. They were required to take the case as they found it. *State Farm,* 808 N.E.2d at 116.

Moreover, this case originated and remained a dissolution matter, within the realm of equity. Husband and Wife, the parties to the equitable proceeding, settled each of the issues that they had agreed to arbitrate and future shareholder distributions would have no impact upon the settlement. The essence of the Siblings' claim was that Husband had breached a fiduciary duty in his capacity as majority shareholder. As such, Husband was entitled to request a jury trial and could not be compelled to submit to arbitration under the auspice of the FLAA.

For the foregoing reasons, we agree with Husband that the arbitrator exceeded the scope of her authority. We therefore reverse the judgment entered upon the arbitration award.

Reversed.

MATHIAS, J., and CRONE, J., concur.