In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 14-1416 & 14-1555

BRC RUBBER & PLASTICS, INCORPORATED,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

CONTINENTAL CARBON COMPANY,

*Defendant-Appellant, Cross-Appellee.*

Appeals from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:11-cv-190 — **Roger B. Cosbey**, *Magistrate Judge.*

ARGUED JANUARY 21, 2015 — DECIDED NOVEMBER 5, 2015

Before BAUER, FLAUM, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Continental Carbon Company
sells carbon black, a material used in rubber products. BRC
Rubber & Plastics makes rubber products for the automotive
industry. The companies contracted for Continental to sup-
ply carbon black to BRC. When Continental refused to con-
firm or ship some of BRC's orders, BRC sued, alleging that

Continental had breached and repudiated the contract. The district court found as a matter of law that the agreement was a "requirements contract," meaning it obligated Continental to sell as much carbon black as BRC needed, and obligated BRC to buy all its carbon black exclusively from Continental. Based on that view, the district court entered judgment for BRC.

Continental appeals the judgment and BRC cross-appeals an issue related to damages. Because we find that the agreement did not obligate BRC to buy any—much less all—of its carbon black from Continental, we hold that the agreement was not a requirements contract, so we vacate the judgment and remand, without reaching BRC's cross-appeal.

## I. BACKGROUND

On January 1, 2010, the parties entered into the contract at issue, which stated: "It is the intent of this agreement that Continental Carbon Company agrees to sell to BRC Rubber & Plastics approximately 1.8 million pounds of [carbon] black annually." In 2010, Continental shipped 2.6 million pounds to BRC, and shipments continued into early 2011. But by April 2011, for a variety of reasons, Continental was struggling to keep up with the total demand from all its customers. BRC placed an order on April 26, 2011, but Continental neither confirmed nor shipped that order.

That led to a series of communications which, after a misunderstanding or two, revealed a point of disagreement: Continental believed that as long as it shipped approximately 1.8 million pounds to BRC annually, it did not have to accept and fill each and every BRC order. BRC believed instead that Continental had to fill every order. BRC's belief was

based on its view that the parties' agreement was a "requirements contract." "A requirements contract is one in which the purchaser agrees to buy all of its needs of a specified material exclusively from a particular supplier, and the supplier agrees, in turn, to fill all of the purchaser's needs during the period of the contract." *Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 186 F.3d 815, 817 (7th Cir. 1999) (Indiana law).

When Continental refused to confirm or ship some subsequent orders, BRC filed this suit. The parties and the district court focused on whether the agreement was a requirements contract. The court found as a matter of law that the agreement was a requirements contract, so Continental's refusal to confirm and ship some orders was a breach and repudiation of the agreement. After a bench trial on damages, the court entered judgment for BRC for nearly $1 million. Continental appeals the judgment and BRC cross-appeals the exclusion of certain testimony from the damages trial.

## II. ANALYSIS

The parties' agreement is governed by Indiana law, under which an unambiguous contract is interpreted as a matter of law by reading the contract as a whole. *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 762 (7th Cir. 2015) (Indiana law); *Brockmann v. Brockmann*, 938 N.E.2d 831, 834–35 (Ind. Ct. App. 2010). Contract terms are given their ordinary meanings, with the ultimate goal of determining the parties' intent. *Brockmann*, 938 N.E.2d at 834–35.

The district court's holding that Continental breached and repudiated the agreement was based on the court's view that the agreement was a requirements contract. We review

that determination de novo. *BKCAP, LLC v. Captec Franchise Tr. 2000-1*, 572 F.3d 353, 358 (7th Cir. 2009). An agreement *is not* a requirements contract unless it: "(1) obligates the buyer to buy goods, (2) obligates the buyer to buy goods exclusively from the seller, and (3) obligates the buyer to buy all of its requirements for goods of a particular kind from the seller." *Zemco*, 186 F.3d at 817. As applied, the parties' agreement was not a requirements contract unless BRC was both obligated to buy some amount of carbon black from Continental and prohibited from buying carbon black from any other seller. In our view, neither condition is met, so we hold that the parties' agreement was not a requirements contract.

BRC's argument to the contrary relies primarily on the following contract provision:

> Meet or Release
>
> If during the term of this agreement BRC receives an offer that they believe is better tha[n] the terms offered in this agreement, Continental Carbon will have the right to meet this agreement or release BRC from any further obligation. …

While this provision does refer to an "obligation" on the part of BRC, it does not show that BRC was obligated to buy carbon black from Continental. The provision is more naturally read as a "right of first refusal," meaning *if* BRC sought to buy carbon black from another seller at a lower price, Continental had to be given the chance to meet that price. But nothing in the "Meet or Release" provision prevented BRC from manufacturing its own carbon black or abandoning its use of carbon black altogether. In other words, the

provision did not obligate BRC to buy carbon black from Continental.

BRC also argues that the "Quantity of Material" and "Rebate/Penalty" provisions obligated BRC to buy carbon black from Continental. The "Quantity of Material" provision is:

> Quantity of Material
>
> It is the intent of this Agreement that Continental Carbon Company agrees to sell to BRC Rubber and Plastics approximately 1.8 million pounds of [carbon] black annually. These volumes are to be taken in approximately equal monthly quantities. BRC Rubber and Plastics, to the best of their ability, will provide accurate forecasts of the future usage at their manufacturing sites which will assist Continental Carbon Company in meeting these and additional requirements.[1]

Under the "Rebate/Penalty" provision, BRC would pay a little less per pound if it bought much more than 1.8 million pounds annually, and a little more per pound if it bought much less. The thresholds for "much more" and "much less" were specified, but the parties agreed to renegotiate those

---

[1] The use of the word "requirements" in the Quantity of Material provision does not mean that the agreement was a requirements contract. *See Agfa-Gevaert, A.G. v. A.B. Dick Co.*, 879 F.2d 1518, 1521 (7th Cir. 1989) ("The … agreement looks like the opposite of a requirements contract, despite the presence of the word "requirements"; for it merely assures the buyer, Dick, a greater supply, and in exchange Dick agrees to pay a premium. It does not seem to obligate Dick to take more than it wants.").

thresholds "[s]hould the normal annual volume for BRC shift significantly."

BRC argues that these provisions demonstrate that 1.8 million pounds was merely an estimate of what BRC would request annually, rather than a firm fixed quantity that Continental was obligated to sell. That much is true, and is conceded by Continental. But BRC's conclusion that the provisions therefore obligated BRC to buy some amount of carbon black does not follow. The argument is a non sequitur, and is contrary to our precedent. *See Brooklyn Bagel Boys v. Earthgrains Refrigerated Dough Prods.*, 212 F.3d 373, 376–80 (7th Cir. 2000) (agreement that lacked a fixed quantity term did not obligate buyer to buy any bagels at all, and was therefore not a requirements contract). In sum, nothing that BRC has pointed us to, or that we have found on our own, convinces us that the agreement required BRC to buy carbon black from Continental.

Further, we find nothing that required BRC to buy *all* of its carbon black *exclusively* from Continental. For the exclusivity requirement, BRC relies again on the "Meet or Release" provision. But by its plain terms, that provision applies only where a different seller offers BRC terms that are "better tha[n] the terms offered" by Continental. In other words, BRC had to give Continental the chance to match a competitor's lower price. But price is not the only reason to contract with additional sellers. As the facts of this case demonstrate, sellers can become over-extended; buyers may pursue a diverse group of sellers to protect against the risk that a single seller cannot keep up with demand. Nothing in the "Meet or Release" provision prevented BRC from doing

so (and BRC admits in its brief that price is not the only factor it considers when negotiating with suppliers).

BRC was not obligated to buy carbon black from Continental, nor was it obligated to buy *all* its carbon black from Continental, so the agreement was not a requirements contract. Because the judgment against Continental was premised on the agreement being a requirements contract, we vacate the judgment and remand. Discussion of BRC's damages is premature, so we do not reach BRC's cross-appeal.

### III. CONCLUSION

We VACATE the judgment of the district court and REMAND the case for further proceedings consistent with this opinion.