In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1881

VESUVIUS USA CORPORATION,

*Plaintiff-Appellant,*

*v.*

AMERICAN COMMERCIAL LINES LLC,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 17-cv-00022 — **Sarah Evans Barker**, *Judge.*

SUBMITTED OCTOBER 23, 2018[*] — DECIDED DECEMBER 6, 2018

Before KANNE, HAMILTON, and ST. EVE, *Circuit Judges.*

KANNE, *Circuit Judge.* This breach of contract action comes
to us in admiralty jurisdiction. Vesuvius USA Corporation
contracted with American Commercial Lines LLC (now

---

[*] At the request of the parties, we have agreed to decide this case with-
out oral argument because the briefs and record adequately present the
facts and legal arguments, and oral argument would not significantly aid
the court. Fed. R. App. P. 34(a)(2)(c).

known as American Commercial Barge Line LLC, or "ACBL")
to transport olivine sand by river barge from Louisiana to
Kentucky. But when one of those shipments arrived with ap-
parent water damage, a dispute arose between the parties
about who was to blame. After some back-and-forth, they
seemed to drop the matter. Two years later, however, Vesu-
vius brought this suit. Because the contract contains a clear
limitations provision requiring the parties to bring disputes
within four months of an incident, we affirm the district
court's dismissal of the case.

## I. BACKGROUND

In 2014, Vesuvius and ACBL entered into a shipping con-
tract to transport olivine sand from New Orleans, Louisiana
to Vesuvius's facility in Wurtland, Kentucky by river barge.
The January 2015 shipment arrived at the discharge port in
Wurtland on February 20. Vesuvius's employees inspected
the cargo upon arrival and found it damaged by excess mois-
ture. They notified ACBL, and ACBL arranged for a surveyor
to perform an inspection that same day. The surveyor found
no structural defect in the barge. Instead, he concluded that
the sand was wet when it was loaded. In transit, some of that
water evaporated, condensed on the overhead portion of the
cargo space, and dripped back onto the sand. (R. 14-2 at 2.)
The surveyor filed his report with ACBL on February 23, and
ACBL promptly contacted Vesuvius to disclaim any liability.

There the matter sat for two years. But on February 1, 2017,
Vesuvius filed suit to recover damages for its loss, alleging
that ACBL had breached the contract by providing an unsea-
worthy vessel. ACBL moved to dismiss the complaint, point-
ing to the limitations provision in the contract:

> 22. MISCELLANEOUS: … This Contract will be in-
> terpreted and enforced under the general maritime
> laws of the United States and, to the extent applica-
> ble, the laws of the State of Indiana. The Parties agree
> that any action or proceeding arising out of or in
> connection with this Contract will be brought exclu-
> sively in a state or federal court in Clark or Floyd
> County, State of Indiana[,] and [Vesuvius] consents
> to personal jurisdiction in such court. … Unless oth-
> erwise provided hereunder, *all disputes under this*
> *Contract … must be brought within four (4) months of*
> *the act or occurrence giving rise to the claim.*

(R. 9-1 at 8) (emphasis added). Reading the plain language of
this provision, the district court determined that the action
was untimely and granted the motion to dismiss. This appeal
followed.

## II. ANALYSIS

Original jurisdiction to hear this case stemmed from 28
U.S.C. § 1333, which authorizes federal district courts to hear
"[a]ny civil case of admiralty or maritime jurisdiction." Be-
cause the alleged breach occurred "on navigable waters," nei-
ther party disputes federal jurisdiction. *Weaver v. Hollywood*
*Casino-Aurora, Inc.*, 255 F.3d 379, 382 (7th Cir. 2001). We review
a motion to dismiss for failure to state a claim under Fed. R.
Civ. P. 12(b)(6) *de novo*, drawing all reasonable inferences in
favor of Vesuvius, the non-moving party. *Boucher v. Fin. Sys.*
*of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

This case turns on the interpretation of the limitations pro-
vision of the contract, and in particular on the meaning of the
word "disputes." Vesuvius argues that the phrase is no more

than a notification requirement: Vesuvius was required to notify ACBL of the problem within four months of its occurrence, and it provided that notification immediately upon discovery of the issue. The provision requires no more, because a "dispute" is not necessarily a lawsuit, and a contractual requirement that the parties sue each other within four months of an incident would force unnecessary litigation of disputes that the parties might work out between themselves given sufficient time. In the alternative, Vesuvius contends that the language in the contract is at least ambiguous, and because its reading is just as plausible as any other reading, Vesuvius should get the benefit of the doubt at this stage in the litigation.

ACBL, on the other hand, believes that the provision requires the parties to bring lawsuits within four months. While it concedes that the provision might appear ambiguous on its own, it insists that other language in the contract provides context and demonstrates that the parties intended to contract for a short limitations period for any potential legal actions.

The parties selected Indiana law to govern their agreement. In Indiana, "[t]he general rules of contract interpretation are that, unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning." *Brockmann v. Brockmann*, 938 N.E.2d 831, 834 (Ind. Ct. App. 2010). "Clear and unambiguous terms in a contract are deemed conclusive, and we will not construe an unambiguous contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Id.* The "ultimate goal" of our analysis is to determine the "parties' intent." *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 804 F.3d 1229, 1231 (7th Cir. 2015) (citing *Brockmann*, 938 N.E.2d at 834–35).

Both parties contend that the term "disputes" is unambiguous. ACBL points to legal dictionaries and various cases to demonstrate that the verb "to bring," when coupled with "claim" or "dispute," usually refers to filing suit in court. *See, e.g.*, *Bring an Action*, *Black's Law Dictionary* (10th ed. 2014). In turn, Vesuvius cites other cases and statutes in which "dispute" had a broader meaning than simply a lawsuit, also encompassing a mere disagreement that may be resolved through negotiation or alternative dispute resolution. *See, e.g.*, *City of New Albany v. Cotner*, 919 N.E.2d 125, 132 (Ind. Ct. App. 2009) (determining that the contractual phrase "sewer fee dispute" was ambiguous).

But "[t]erms are not ambiguous merely because the parties disagree as to the proper interpretation of those terms." *Brockmann*, 938 N.E.2d at 835. While we might get bogged down in an argument over dictionary definitions if we confine the scope of our analysis to the provision alone, under Indiana law, we must "construe the contract as a whole and consider all provisions of the contract, not just the individual words, phrases, or paragraphs." *Bhd. Mut. Ins. Co. v. Michiana Contracting, Inc.*, 971 N.E.2d 127, 131 (Ind. Ct. App. 2012). As the district court correctly noted, the other provisions contained in ¶ 22 relate to choice of law, choice of forum and venue, and consent to personal jurisdiction. Viewed in that context, an obligation to bring "disputes" seems more likely to refer to the lawsuits to be brought under the other rules established in the same paragraph.

Vesuvius, acknowledging this point, looks to linguistic inconsistencies within the paragraph. If "disputes" are lawsuits, it asks, then why does ¶ 22 also refer to a lawsuit as an "action or proceeding?" Fair enough, but when we expand our scope

once more, we see that the sentence at issue cannot be a mere notification requirement. Paragraph 9 of the contract includes just such a notification requirement: "[Vesuvius] will immediately notify [ACBL] in writing if a barge is reasonably determined to be unsuitable. Such notification will include the reason such barge is unsuitable." (R. 9-1 at 6.) If we were to read the limitations provision in ¶ 22 as a requirement for Vesuvius to notify ACBL of a problem with its barge within four months, then the notification provision in ¶ 9 would be superfluous. The more logical conclusion is that the parties knew how to write a notification requirement, and they inserted it in ¶ 9. Likewise, they knew how to write a limitations provision, and they inserted it in ¶ 22, right next to the other provisions spelling out how and where to bring suit in court. Vesuvius failed to comply with that unambiguous contractual obligation, and its suit is untimely.

On a final note, Vesuvius points to dicta in the district court's order dismissing its case in which it alleges that the district court improperly drew an inference against it:

> We might find Vesuvius's argument more persuasive if there had not been so long a time-lapse between ACBL's denial of responsibility for the cargo damage and its filing of this lawsuit. … The reasonable inference from such silence is that Vesuvius had elected to acquiesce in, or at least chose not to contest, ACBL's rejection of their complaint about the condition of the cargo.

(R. 22 at 7.)

As we noted above, when considering a motion to dismiss under Rule 12(b)(6), a court must draw all reasonable inferences in favor of the non-moving party. *Boucher*, 880 F.3d at

365. In this case, it appears that the district court drew at least one inference *against* the non-moving party.

But any error was harmless. First, the district court had already stepped through the correct contractual analysis and made its conclusion before any discussion of inferences to draw from the parties' behavior after the incident had occurred. Second, and more importantly, even if we were to draw the opposite inference in Vesuvius's favor, it would make no difference. We might infer that Vesuvius genuinely believed that it had complied in full with its obligations under ¶ 22 by notifying ACBL of the problem on February 20, 2015. Vesuvius might then have genuinely believed that it had all the time in the world to bring suit, and it did so two years later. But because we find that the contract is not ambiguous, the parties' actions after they signed the contract are irrelevant to the meaning of the contract itself. Regardless of whether we were to infer from Vesuvius's actions that it genuinely believed its own position or whether it knew that its suit was untimely, the meaning of the contract is the same.

### III. CONCLUSION

Standing on its own, perhaps the limitations provision of the contract might be ambiguous. But read in context with the rest of the contract, there is no question that Vesuvius was required to file suit no later than four months after it discovered the damage. Because Vesuvius waited two years to bring its claim, the district court properly dismissed it as untimely. Accordingly, we AFFIRM the judgment of the district court.