In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 19-1731

VILLAS AT WINDING RIDGE,

*Plaintiff-Appellant,*

*v.*

STATE FARM FIRE AND CASUALTY COMPANY,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:16-cv-3301 — **Tanya Walton Pratt**, *Judge.*

———————————

ARGUED SEPTEMBER 23, 2019 — DECIDED NOVEMBER 8, 2019

———————————

Before EASTERBROOK, HAMILTON, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* In June 2013, a storm passed over Villas at Winding Ridge ("Winding Ridge"), a condominium complex located in Indiana, causing some minor damage from hail. Winding Ridge did not discover the damage until almost a year later when a contractor inspected the property to estimate the cost of replacing its aging roofs. Remembering its one-year State Farm Fire and Casualty Company ("State

Farm") insurance policy, Winding Ridge submitted a claim to State Farm. Winding Ridge and State Farm inspected the property and exchanged estimates on the amount of the loss, but they could not reach an agreement. Winding Ridge subsequently demanded an appraisal under the insurance policy, and State Farm complied. After exchanging competing appraisals, the umpire upon whom both sides had agreed issued an award, which later became binding.

Winding Ridge filed suit against State Farm alleging breach of contract, bad faith, and promissory estoppel. The parties cross-moved for summary judgment. The district court granted in part and denied in part Winding Ridge's cross-motion for partial summary judgment and granted State Farm's motion for summary judgment. Winding Ridge now appeals the district court's ruling on State Farm's motion for summary judgment.

We affirm. We hold that the policy is unambiguous and enforceable. There is also no evidence that State Farm breached the policy or acted in bad faith when resolving the claim.

## I. Background

Winding Ridge is a condominium complex with 32 residential buildings and a clubhouse located in Indianapolis, Indiana. State Farm insured Winding Ridge under a Residential Community Association Policy effective between July 1, 2012 and July 1, 2013. The policy covered "accidental direct physical loss" to the covered property, unless the loss is subject to a policy exclusion.

If the loss is covered under the policy, State Farm can choose one of the following loss payment options:

    (a) Pay the value of lost or damaged property;

    (b) Pay the cost of repairing or replacing the lost or damaged property;

    (c) Take all or any part of the property at an agreed or appraised value; or

    (d) Repair, rebuild or replace the property with other property of like kind and quality.

The policy states that State Farm will determine the value of the covered property as follows:

    (a) At replacement cost without deduction for depreciation, as of the time of loss, subject to the following:

        i.   We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

          …

            2) The cost to replace, on the described premises, the lost or damaged property with other property of comparable material, quality and used for the same purpose;

        ….

If the parties disagree on the amount of the loss, either party may demand an appraisal.

    If we and you disagree on the value of the property or the amount of loss, either may make

written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

(1) Pay its chosen appraiser; and

(2) Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

In 2014, Winding Ridge worked with Rocklane Company ("Rocklane"), a contractor, to assess its 9- to 16-year-old roofs. Rocklane inspected the roofs and identified hail damage to 7 or 8 buildings' roofs. Around April 18, 2014, Winding Ridge tendered the claim to State Farm, claiming a June 13, 2013 date of loss.

Eric Meador, a State Farm claims adjuster, spoke to a Rocklane representative, who advised that approximately 12 of the 32 residential buildings had sustained hail damage to their roofs. Meador inspected all 33 buildings at Winding

Ridge in May 2014 and observed minimal hail damage. Specifically, he found "soft metal damage, hail damage to the soft metal condensers of some air conditioning units, damage to fascia, some unrelated wind damage that took place following the cancellation of the policy, mechanical damage from ice removal, damage to screens, prior mismatched shingle repairs and golf ball dents on the golf course side of complex." On May 29, 2014, Meador prepared a replacement cost estimate for hail damage totaling $65,713.54, which included repairs to soft metal, some air conditioning condensers, screens, and gutters and downspouts. It did not include repairs to any roofing shingles. State Farm subsequently paid Winding Ridge for the estimated repairs less depreciation.

Winding Ridge disagreed with State Farm's estimate and hired Matthew Latham, a public adjuster at Crossroads Claims Consulting, to provide a competing estimate. Latham concluded that there was hail damage to all 33 buildings and estimated a replacement cost of $1,975,264. This estimate included full replacement for all shingles, decking, metal vents, flashing, caps, gutters and downspouts on all 33 buildings.

Meador reviewed Latham's estimate and agreed to reinspect the buildings. He reinspected them in April 2015 and hired Doug Brown, an engineer, to conduct a separate inspection. Brown drafted a report of his findings and concluded that "[t]he roofing shingles throughout the neighborhood had not been functionally damaged by hailstone impacts." Brown also found that the areas identified by Latham "exhibited granule loss consistent with blistering and the normal aging of the shingles, and were not attributable to hailstone impacts." Lastly, he identified hail damage to soft metals, screens, and some air-conditioning units. Meador provided

Latham with a copy of Brown's report and confirmed that State Farm's estimate included the full scope of damages covered by the insurance policy.

On September 9, 2015, Winding Ridge demanded an appraisal under the policy, which State Farm accepted. In doing so, State Farm referred to the policy's appraisal provision and informed Winding Ridge that "[a]ppraisal is a process by which the amount of loss, if any, may be determined. Appraisal does not resolve coverage disputes. In other words, it is not a process by which coverage is determined for a particular loss or item of damage."

Both parties complied with the policy's appraisal provision. State Farm and Winding Ridge each hired independent appraisers Michael Scott and Garrett Kurtt, respectively, and they reinspected the buildings. Scott estimated $79,921.80 for repairs to all 33 buildings, but his estimate did not include full shingle replacement on any building. Kurtt estimated $676,824.07 for repairs including full shingle replacement on 13 buildings. Kurtt did not claim full shingle replacement for any of the remaining buildings.

Again, the parties could not agree on an estimate. The main disagreement between the parties was whether all shingles needed to be replaced on 13 buildings. Pursuant to the policy's appraisal provision, the parties' appraisers selected an independent umpire, Al Kalemba with Illiana Claims Services. Scott, Kurtt, and Kalemba inspected the property. On April 30, 2016, Kalemba issued a proposed award for (1) 20% repair allowance for roofing shingles on 13 buildings, (2) replacement costs for soft metal damage on all 33 buildings, and (3) replacement costs for roofing shingles around new turtle roof vents on all 33 buildings. Specifically, Kalemba found

that "[t]he granule loss does not indicate hail damage. During the life of a shingle granules are constantly shedding from the mat as designed." Kalemba's proposed award totaled $154,391.77.

Winding Ridge was dissatisfied with the proposed award. On May 20, 2016, Kurtt asked Kalemba to modify the award to cover full shingle replacement on 13 buildings. For the first time, Kurtt reported that the original shingles were discontinued, and any replacement shingles would not match the existing shingles. During the appraisal process, Winding Ridge had received a letter from shingle manufacturer GAF dated November 18, 2015, stating that the shingles on Winding Ridge's roofs are no longer available, and "GAF does not have a direct replacement that is compatible in color or that would keep the roof uniformed [sic]." Winding Ridge failed to share this information with Kalemba or State Farm's appraiser before Kalemba issued the proposed award. And Winding Ridge did not submit this issue as part of the disputed loss.

Kalemba reviewed the additional information, but he did not amend the award.

> Our charge was to establish the existence of hail damage to the shingles which was in dispute. Per my findings clearly depicted on my award report there is very little if any hail damage to the shingles observed. I have allowed for approximated spot repairs based upon the minor damage observed.…
>
> As to the matching argument, I would again state that we are establishing the presence of damage to the shingles and I have allowed for

same as well as the replacement of shingles around the replacement of roof vents. In addition, there was evidence of prior patching of shingles on many of the roof's [sic] inspected. The case law presented here is not applicable and matching issues are in the realm of policy coverage issues which are not a part of this appraisal process.

Therefore, my original recommended award remains.

Both Kalemba and Scott signed the award, making it binding, and State Farm issued payment to Winding Ridge.

Winding Ridge filed suit against State Farm in Indiana state court, and State Farm removed the suit to federal court. The complaint alleges claims for breach of contract, bad faith, and promissory estoppel. At some point after Winding Ridge tendered the claim to State Farm, Winding Ridge independently took out a $1.5 million loan to replace the shingles on all 33 buildings. Winding Ridge now seeks damages for approximately $1.5 million plus the interest on the loan ($97 per day) and prejudgment interest.

Both parties moved for summary judgment. The district court granted in part and denied in part Winding Ridge's cross-motion for partial summary judgment, granted State Farm's motion for summary judgment, and denied as moot State Farm's motion to preclude expert testimony. Winding Ridge now appeals the district court's ruling on State Farm's motion for summary judgment.

## II. Discussion

We review the district court's summary judgment ruling de novo and in the light most favorable to Winding Ridge. *Peerless Network, Inc. v. MCI Commc'n Serv., Inc.*, 917 F.3d 538, 545 (7th Cir. 2019). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### A. Breach of Contract

Winding Ridge asserts legal and factual challenges to the district court's ruling. First, it argues that the appraisal provision is ambiguous and therefore is unenforceable. Second, Winding Ridge asserts that the award is not binding because the umpire improperly determined the scope of the loss rather than just the amount of the loss. Third, it claims that there are genuine issues of material fact that State Farm breached the insurance policy.

Under Indiana law, courts give unambiguous contract terms their plain meaning. *Vesuvius USA Corp. v. Am. Commercial Lines LLC*, 910 F.3d 331, 333 (7th Cir. 2018). "'Clear and unambiguous terms in a contract are deemed conclusive, and we will not construe an unambiguous contract or look to extrinsic evidence, but will merely apply the contractual provisions.'" *Id.* (quoting *Brockmann v. Brockmann*, 938 N.E.2d 831, 834 (Ind. Ct. App. 2010)).

Indiana courts have repeatedly enforced appraisal clauses in insurance contracts. *See, e.g., Philadelphia Indem. Ins. Co. v. WE Pebble Point,* 44 F. Supp. 3d 813, 817 (S.D. Ind. 2014); *see also Shifrin v. Liberty Mut. Ins.,* 991 F. Supp. 2d 1022, 1038 (S.D. Ind. 2014). And the resulting appraisal awards are binding

absent exceptional circumstances, which means manifest injustice, fraud, collusion, misfeasance, or unfairness. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 872, 875 (7th Cir. 2000); *FDL, Inc. v. Cincinnati Ins. Co.*, 135 F.3d 503, 505 (7th Cir. 1998); *Atlas Const. Co., Inc. v. Indiana Ins. Co., Inc.*, 309 N.E.2d 810, 813–14 (Ind. Ct. App. 1974) ("When, however, the award is uninfected with such unfairness or injustice, it is not to be set aside and replaced by the subjective judgment of a reviewing court."). This is particularly true when the parties voluntarily submit to an appraisal under the policy. *See Jupiter Aluminum Corp.*, 225 F.3d at 875; *FDL, Inc.*, 135 F.3d at 505.

We find that the policy's appraisal provision is unambiguous. The policy states that, if the parties "disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss." Winding Ridge and State Farm disagreed on the amount of loss, Winding Ridge demanded an appraisal, and State Farm accepted the demand. As required, both Winding Ridge and State Farm selected appraisers. The parties' appraisers disputed how much hail damage Winding Ridge had sustained. Specifically, Winding Ridge claimed shingle replacements were needed for 13 buildings. Following the appraisal provision, the appraisers selected an independent umpire and presented their estimates to him. Kalemba resolved the dispute by awarding (1) 20% repair allowance for roofing shingles on 13 buildings, (2) replacement costs for soft metal damage on 33 buildings, and (3) replacement costs for roofing shingles around new turtle roof vents on 33 buildings. Both Kalemba and Scott signed the award, and the award became binding.

In an attempt to set aside the award, Winding Ridge argues that the award is not binding because Kalemba

mistakenly determined the scope of the loss. We disagree. First, Kalemba resolved the dispute that the parties presented to him: namely, the amount of hail damage to the roofing shingles on 13 buildings and to the soft metal on 33 buildings. Winding Ridge has not identified any exceptional circumstances such as unfairness, manifest injustice, fraud, collusion, or misfeasance that would warrant setting this award aside. *See FDL, Inc.*, 135 F.3d at 505. Second, the mere presence of coverage disputes (like matching shingles) in addition to an amount of loss dispute does not negate an appraisal award. *See Philadelphia Indem. Ins. Co.*, 44 F. Supp. 3d at 818 ("To hold otherwise would be to say that an appraisal is never in order unless there is only one conceivable cause of damage—for example, to insist that 'appraisals can never assess hail damage unless a roof is brand new.'" (citation omitted)). Here Kalemba determined the value of the loss based on the disputed loss submitted by the parties' appraisers and as required under the policy; he did not decide the coverage issues.

Winding Ridge also claims there are genuine issues of material fact regarding State Farm's purported breach that preclude summary judgment. To state a breach of contract claim, a plaintiff must allege the existence of a contract, defendant's breach, and damages. *See, e.g., Shifrin*, 991 F. Supp. 2d at 1043; *Auto-Owners Ins. Co. v. C & J Real Estate, Inc.*, 996 N.E.2d 803, 805 (Ind. Ct. App. 2013). There is no dispute that the insurance policy exists. The issue is whether State Farm breached that policy. Winding Ridge argues that State Farm breached the policy by (1) failing to pay for new roofs on all 33 buildings, (2) applying the appraisal award to the entire claim when it only resolved damage on 13 buildings, and (3) failing to amend the award to cover matching shingles on 13 buildings.

We conclude that none of these factors create an issue of material fact.

State Farm did not breach the policy by declining to pay for new roofs on all 33 buildings. Winding Ridge's own appraiser, Garrett Kurtt, found no hail damage to the roofing shingles on 20 buildings; his estimate only included full shingle replacements on 13 buildings. Both State Farm's appraiser and the umpire disagreed with Kurtt's estimate and found minimal hail damage on 13 buildings. The award compensated Winding Ridge for 20% shingle replacement on those buildings. The fact that Winding Ridge independently replaced the shingles on all 33 buildings for $1.5 million while its claim was pending does not obligate State Farm under the policy or mean State Farm breached the policy.

Further, the appraisal award plainly resolved the entire claim, not just the damage to 13 buildings as Winding Ridge contends. The parties submitted the disputed loss to the umpire, and that disputed loss did not include the replacement of the shingles on all buildings. The umpire resolved the parties' dispute. Specifically, the binding award has three parts. The first and big-ticket item was whether the hail damaged some or all the shingles on 13 buildings. The umpire testified that State Farm's and Winding Ridge's appraisers agreed that there was no shingle damage on the other 20 buildings. Neither Scott's estimate nor Kurtt's estimate provided for full roof replacement on all 33 buildings. Instead, Scott's estimate did not include full shingle replacement on any building while Kurtt's estimate included full shingle replacement on 13 buildings. The umpire determined that there was minor hail damage to the roofing shingles on 13 buildings and awarded 20% allowance to repair those shingles. Second, the award also included replacement costs for soft metal damage on all 33 buildings. Specifically, it provided

$54,846.61 actual cash value for "roofing metals and elevation repairs" and noted that "the above line item reflects the York Appraisal estimated damage," which itemized soft metal damage to the entire property. Lastly, the award covered the cost of replacement shingles around the new turtle roof vents on all 33 buildings.

Finally, Kalemba's decision not to amend the proposed award for matching shingles does not create a genuine dispute of material fact. Winding Ridge's matching shingles argument was untimely. It tendered the initial claim to State Farm in April 2014. The parties inspected the property several times before Winding Ridge demanded an appraisal. During the appraisal process, the appraisers and umpire inspected the property, and the umpire reached a proposed award on April 30, 2016. It was not until May 20, 2016 that Winding Ridge's appraiser first reported that the shingle manufacturer discontinued the original shingles. Winding Ridge could have raised this issue on November 18, 2015, six months earlier, when it received a letter from the shingle manufacturer GAF stating that direct replacements are not available. It did not. To permit this kind of second guessing would only frustrate the purpose of a binding appraisal in the first place. *See FDL, Inc.*, 135 F.3d at 505.

Winding Ridge makes several, additional arguments as to why the district court's ruling was improper. None of these have merit, but we briefly address each one in turn below.

First, Winding Ridge argues that industry standards and State Farm's policy guidelines require State Farm to cover the replacement cost for matching shingles on 13 buildings. These documents are extrinsic evidence, which we can consider only if the policy is ambiguous. *See Vesuvius USA Corp.*, 910

F.3d at 333. Because the provision at issue is unambiguous, we decline Winding Ridge's invitation to consider extrinsic evidence to interpret the provision.

Second, Winding Ridge claims that, "but for" the hail storm, it would have had uniform roofs with matching shingles. All 33 roofs are therefore a covered loss under the policy that State Farm is obligated to repair. Winding Ridge forfeited this argument by failing to raise it before the district court. *See Scheidler v. Indiana*, 914 F.3d 535, 540, 544 (7th Cir. 2019) ("A party generally forfeits issues and arguments raised for the first time on appeal.").

Third, it also argues that two cases support its position that the policy term "comparable material" means a reasonable color match for the entire roof. These cases are factually distinguishable. In *Erie Insurance Exchange v. Sams*, the court held that the entire roof, cathedral ceiling, and exterior vinyl siding had sustained direct physical damage from the storm. *Erie Ins. Exch., v. Sams*, 20 N.E.3d 182, 186, 190 (Ind. Ct. App. 2014). There was also evidence that the house had a uniform appearance before the storm and that a mismatching roof slope and siding would devalue the home. *Id.* In *Cedar Bluffs Townhome Condominium Association*, the appraisal panel issued an award for total replacement of the siding panels. *Cedar Bluff Townhome Condo. Ass'n, Inc. v. Am. Family Mut. Ins. Co.*, 857 N.W.2d 290, 292 (Minn. 2014). Here, the umpire concluded that only some of the shingles were damaged on some buildings.

Lastly, Winding Ridge argues that replacing one shingle requires replacing all shingles and cites *Gutkowski v. Oklahoma Farmers Union Mutual Insurance Company*, 176 P.3d 1232, 1234 (Okla. Civ. App. 2007). We disagree. In *Gutkowski*, there was

evidence that replacing the top layer of damaged composition shingles would necessarily damage the underlying wooden shingles. *Gutkowski*, 176 P.3d at 1234. Here there is no evidence that replacing the damaged shingles would harm the undamaged shingles. We previously analyzed similar policy language and stated that "[i]f one shingle at the corner of a slate roof is damaged and no matching replacement shingle is available, a building owner would not be entitled to an entire new roof." *See Windridge of Naperville Condo. Ass'n v. Phila. Indem. Ins. Co.*, 932 F.3d 1035, 1042 (7th Cir. 2019). Winding Ridge does not present any meritorious arguments why we should find otherwise here.

### B. Bad Faith

Winding Ridge argues that there is evidence that precludes summary judgment on the bad faith claim. First, the award was more than State Farm's appraiser's initial estimate. Second, State Farm's handling of another claim suggests that State Farm handled the Winding Ridge claim in bad faith.

Under Indiana law, insurers are required to deal in good faith with their insureds. *See Erie Ins. Co., v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993). This obligation includes refraining from "(1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Id.* at 519. This does not create a new cause of action every time an insurer erroneously denies a claim. *Id.* at 520 ("That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana."). "To prove bad faith, the plaintiff must establish, with clear and convincing evidence,

that the insurer had knowledge that there was no legitimate basis for denying liability." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). Plaintiffs are also required to prove an insurer's "conscious wrongdoing" or "culpable mental state." *See Sexson v. State Farm Fire & Cas. Co.*, 61 F. App'x 267, 271 (7th Cir. 2003) (citing *Colley v. Indiana Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998)). This is a high burden of proof. *Inman v. State Farm Mut. Auto. Ins. Co.*, 981 N.E.2d 1202, 1207 (Ind. 2012).

We conclude that State Farm did not act in bad faith. There is no evidence that State Farm delayed payment to Winding Ridge, deceived Winding Ridge, or exercised an unfair advantage to pressure Winding Ridge to settle the claim. The only question is whether State Farm made an unfounded refusal to pay policy proceeds to Winding Ridge. It did not. Insurance companies may dispute claims in good faith. *Hickman*, 622 N.E.2d at 518. Winding Ridge submitted a claim for hail damage to State Farm. State Farm investigated the claim, reached a claim estimate, and issued payment to Winding Ridge. Winding Ridge disputed the claim estimate and demanded an appraisal under the policy terms. State Farm cooperated in the appraisal process by re-inspecting the property and presenting a claim estimate to the umpire and Winding Ridge's appraiser. The umpire reached an award, which State Farm's appraiser signed. State Farm subsequently paid Winding Ridge what it owed under the binding award. Winding Ridge has not shown any evidence, let alone clear and convincing evidence, that State Farm acted in bad faith.

Nor is there any evidence that State Farm acted with a culpable state of mind. The mere fact that State Farm's initial estimate was less than the award does not suggest culpability.

At best, it may suggest that State Farm's first inspection was inadequate. But this alone does not constitute bad faith. *See Eli Lilly & Co. v. Zurich Am. Ins. Co.*, 405 F. Supp. 2d 948, 958 (S.D. Ind. 2005).

Winding Ridge argues that State Farm's claims adjuster engaged in deceitful ignorance of hail damage to Winding Ridge's roofs in retaliation for another claim called Briarstone. Briarstone is another condominium complex that tendered a claim for hail damage to State Farm. State Farm evaluated the claim and found no hail damage. The parties agreed to arbitrate the claim, but eventually settled the claim. Winding Ridge believes that State Farm was upset with the Briarstone settlement and that experience negatively influenced State Farm's initial estimate of the Winding Ridge claim. The facts do not support Winding Ridge's theory. Indeed, State Farm's claims adjuster provided an initial estimate and submitted payment to Winding Ridge *before* Briarstone tendered its claim to State Farm on June 19, 2014. State Farm's initial estimate therefore could not have been influenced by the Briarstone claim.

For the foregoing reasons, we AFFIRM the district court.