In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-2747

PEERLESS NETWORK, INC., et al.,

*Plaintiffs-Appellees*,

*v.*

MCI COMMUNICATIONS SERVICES, INC.,
VERIZON SERVICES CORP., and
VERIZON SELECT SERVICES, INC.,

*Defendants-Appellants*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-07417 — **Thomas M. Durkin**, *Judge*.

ARGUED JANUARY 14, 2019 — DECIDED FEBRUARY 20, 2019

Before WOOD, *Chief Judge*, and BRENNAN and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. This case takes us into the complex world of telecommunications, but the question we confront is simple: Was the district court correct to grant partial final judgment under Federal Rule of Civil Procedure 54(b) on some claims, despite their significant factual overlap with

pending claims? We conclude that it was not. We also conclude that a genuine issue of fact persists with respect to certain breach-of-contract claims. We therefore vacate the Rule 54(b) judgment on certain counts, dismiss in part for lack of jurisdiction, and otherwise reverse and remand.

## I. Background

Local Exchange Carriers ("LECs") and Interexchange Carriers ("IXCs") are types of telecommunications service providers. They work together to enable phone users to make long-distance calls. LECs operate in a limited geographical area, IXCs transport calls across LECs to allow customers to make calls to geographic areas outside their own. As the district court succinctly described:

> A common example of this would be a long-distance call from Chicago to St. Louis. In that example, AT&T Illinois (the incumbent LEC in Chicago) performs transport and switching functions and originates the call on its network, and hands the call over to an IXC, such as Sprint Long-Distance, which carries the call to St. Louis. Sprint then hands the call off to AT&T Missouri (the incumbent LEC in St. Louis), which performs switching functions and delivers the call to the called party. While the process sounds cumbersome, in practice it happens in fractions of seconds.

*Peerless Network, Inc. v. MCI Commc'ns Servs., Inc.*, No. 14 C 7417, 2018 WL 1378347, at *2 (N.D. Ill. Mar. 16, 2018). Switching functions include tandem switching, which connects LECs to IXCs, and end-office switching, which connects LECs to end-users.

IXCs pay a fee in exchange for access to an LEC's network, known as an "access service charge." The rates are set forth either in tariffs the LEC has filed with regulatory agencies or in negotiated agreements between the IXC and LEC.

In February 2009, Peerless, an LEC, and Verizon, an IXC,[1] entered into a "Tandem Service Agreement," a contract that provided for lowered rates for certain switching services. If a contractually provided rate did not apply, Peerless billed Verizon its tariff rates, which Peerless filed with the Federal Communications Commission and state public utility commissions.

In 2013, the relationship between the parties broke down. Verizon disputed and withheld payment for certain charges on Peerless's bills. In September 2013, the parties entered into a standstill agreement in an attempt to avoid litigation. The agreement, however, did not have its intended effect. Verizon continued to withhold payment, and in July 2014, Peerless notified Verizon that it was replacing certain rates in the Tandem Service Agreement with the tariff rates. Verizon still withheld payment, and in September 2014, Peerless sued Verizon.

---

[1] The Peerless plaintiffs-appellees are a parent company and several subsidiary competitive LECs, meaning that they are LECs that entered the market after the Telecommunications Act of 1996. *See Indiana Bell Tel. Co. v. McCarty*, 362 F.3d 378, 382 & n.5 (7th Cir. 2004). Two subsidiaries are not competitive LECs, but that is irrelevant to this appeal. The Verizon defendants-appellants consist of an IXC, a telecommunications carrier, and a management company.

Peerless's complaint alleged twelve counts, but only a subset of those are relevant to this appeal.[2] Counts I and II alleged a breach of the Tandem Service Agreement. Counts III through V and XI alleged a breach of federal and state tariffs and a related declaratory-judgment claim.

In defense, Verizon alleged that, for multiple reasons, Peerless was not entitled to collect on the outstanding amounts it had billed Verizon. First, Verizon asserted that Peerless qualifies as an access stimulator, which is an LEC with high rates that "enters into an arrangement with a provider of high call volume operations such as chat lines, adult entertainment calls, and 'free' conference calls." *In re Connect Am. Fund*, 26 F.C.C. Rcd. 17663, ¶ 656 (2011). "The arrangement inflates or stimulates the access minutes terminated to the LEC, and the LEC then shares a portion of the increased access revenues resulting from the increased demand with the 'free' service provider, or offers some other benefit to the 'free' service provider." *Id.* Verizon asserted that, despite engaging in access stimulation since 2012, Peerless failed to reduce its tariff rates until 2015, as the FCC requires access stimulators to do. *See* 47 C.F.R. § 61.26(g). Even then, Verizon argues, the reduced rates did not comply with FCC rules.

Second, Verizon alleged that Peerless was billing certain services at higher rates that did not apply to those services. Specifically, Verizon alleged that Peerless (1) billed end-office rates for routing Voice over Internet Protocol ("VoIP") calls

---

[2] The district court dismissed Counts VI through IX at the motion to dismiss stage, and the district court granted summary judgment for Verizon on Count X. Peerless stated in the proceedings below that it would withdraw Count XII "[a]t the appropriate time."

even though routing such calls does not meet the definition of end-office switching; and (2) billed terminating switched-access rates for routing calls to two-stage calling providers, such as prepaid calling-card services, even though Peerless was not actually terminating the calls. Verizon alleged that billing at these higher rates violated telecommunications law and the terms of Peerless's tariffs.

Verizon also asserted four counterclaims for breach of federal and state tariffs and related declaratory judgments. These counterclaims relied on the same access stimulation, VoIP, and two-stage calling arguments. In its breach-of-tariff counterclaims, however, Verizon sought to recover amounts it had already paid Peerless for the charges allegedly made in violation of Peerless's tariffs and telecommunications law.

The parties cross-moved for partial summary judgment. The district court referred the access stimulation, VoIP, and two-stage calling issues, as alleged in the counterclaims, to the FCC under the primary-jurisdiction doctrine because they involved complicated issues of telecommunications law that depended on "the resolution of numerous interpretive questions." *See United States ex rel. Sheet Metal Workers Int'l Ass'n, Local Union 20 v. Horning Invs., LLC*, 828 F.3d 587, 592 (7th Cir. 2016) ("Primary jurisdiction is a permissive doctrine that applies when resolving a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.") (internal quotation marks omitted). The district court accordingly stayed Verizon's counterclaims.[3]

---

[3] In its summary judgment order, the district court expressly stayed only Counterclaims I and III. In its Rule 54(b) order, however, the district

Despite the referral and stay, the district court granted summary judgment to Peerless on its breach-of-tariff claims. The district court concluded that Verizon's access stimulation defense could be adjudicated separately from Peerless's collection action, reasoning that Verizon was required to pay disputed charges before challenging them. The district court did not independently resolve the VoIP and two-stage calling defenses, instead stating summarily in a footnote that the same reasoning applied to those challenges.

The district court entered a partial final judgment on Peerless's breach-of-tariff claims pursuant to Federal Rule of Civil Procedure 54(b). It determined that it would be "unjust" to make Peerless wait to collect on the unpaid bills until the FCC resolved Verizon's claims, and that the risk that Verizon might be entitled to a refund is outweighed by the potential damage to Peerless in further delay.

The district court also granted summary judgment and Rule 54(b) partial final judgment on Peerless's claims regarding the breach of the Tandem Service Agreement. The district court concluded that Verizon had not disputed the alleged breach, only the amount owed. Verizon appeals.

## II. Discussion

Neither party disputes that Verizon's counterclaims were properly referred to the FCC. But Verizon argues that the district court erred in granting partial final judgment on Peerless's breach-of-tariff claims. Because Peerless's entitlement to collect under its tariffs substantially overlaps with the claims

court referred generally to staying "Verizon's counterclaims." We interpret this to mean that all four of Verizon's counterclaims are currently stayed in the district court.

that are pending in the district court and before the FCC, we agree. We therefore do not reach the underlying merits of these claims.

Peerless's claims that Verizon breached the Tandem Service Agreement, however, are properly before us. Verizon contests that it breached the agreement and argues that Peerless has not presented sufficient evidence to show a breach. We conclude that a genuine dispute of material fact remains on those claims and summary judgment was improper.

## A. The Tariff Claims

When a case involves more than one claim, Rule 54(b) allows a federal court to direct entry of a final judgment on "one or more, but fewer than all, claims," provided there is no just reason for delay. Fed. R. Civ. P. 54(b). A final judgment entered under Rule 54(b) is immediately appealable though the rest of the case remains pending in the district court. *VDF FutureCeuticals, Inc. v. Stiefel Labs., Inc.*, 792 F.3d 842, 845 (7th Cir. 2015).

We conduct a two-step analysis of a Rule 54(b) partial final judgment. First, we make sure that the order was truly a final judgment—a review we undertake *de novo. Gen. Ins. Co. of Am. v. Clark Mall Corp.*, 644 F.3d 375, 379 (7th Cir. 2011). Second, we ask whether the district court abused its discretion in finding no just reason to delay the appeal of the claim that was finally decided. The goal of our analysis is to prevent "piecemeal appeals" involving the same facts. *Id.* (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 10 (1980)).

Our inquiry starts and stops at the first step. The Rule 54(b) order was improper as to the breach-of-tariff claims because it did not constitute a final judgment. When it comes to

determining if a judgment is truly final, we consider whether there is too much factual overlap with claims remaining in the district court. *VDF FutureCeuticals*, 792 F.3d at 845. Even if multiple claims arise from the same set of facts, we consider whether they are based on "entirely different legal entitlements yielding separate recoveries" or "different legal theories aimed at the same recovery"—the latter of which makes Rule 54(b) partial final judgment improper. *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 464 (7th Cir. 2008). Where, as here, "final" claims may yet be undercut by a claim still pending before the district court, there may be unacceptable overlap. *VDF FutureCeuticals*, 792 F.3d at 845.

The breach-of-tariff claims before us now and those stayed in the district court are factually and legally intertwined. Reaching the merits of this appeal would require, in part, addressing the lawfulness of Peerless's tariffs and the interpretation of both the tariff and unsettled areas of federal telecommunications law. Verizon asks us to determine whether a tariff that does not meet requirements for access stimulators can ever be enforceable. It also asks us to determine whether Peerless's VoIP and two-stage calling billing practices comply with thorny areas of FCC and D.C. Circuit precedent. These are the exact same issues that form the basis of Verizon's counterclaims, which have been referred to and are pending resolution before the FCC. If the FCC decides those issues in favor of Verizon, then Peerless may not have been entitled to collect on its invoices. If Peerless was not entitled to collect, then the district court's entry of judgment was for naught. And, regardless of how the FCC decides, the unsuccessful parties could appeal the district court's application of that decision to the currently stayed counterclaims. It is therefore

possible, indeed likely, that the very same facts and issues will arise before us again once the district court resolves Verizon's counterclaims. This scenario is exactly the type of judicial inefficiency that makes Rule 54(b) partial final judgment improper here. *Gen. Ins.*, 644 F.3d at 379.

True, an argument that a tariff is unreasonable or unlawful must be brought as a counterclaim and can be adjudicated separately from a collection action, including for Rule 54(b) purposes.[4] *See Reiter v. Cooper*, 507 U.S. 258, 266 (1993); *Baltimore & Ohio Chicago Terminal R. Co. v. Wisconsin Cent. Ltd.*, 154 F.3d 404, 407 (7th Cir. 1998). And as Peerless asserts, Verizon's challenge to the tariff rates on the grounds that Peerless is an access stimulator is an unreasonable-rate challenge which may, in certain circumstances, be stayed while the remainder of the collection action goes forward.

But the rest of Verizon's challenges are to Peerless's compliance with its own tariff rates and with federal communications law—not challenges to the tariffs themselves. Verizon argues that Peerless billed end-office switching rates for routing VoIP calls despite the fact that routing such calls does not meet the definition of end-office switching as defined in the tariff or by law.[5] Verizon also argues that, in violation of the

---

[4] This is a function of the filed-rate doctrine, the details of which we need not go into in this opinion.

[5] Whether routing VoIP calls is the "functional equivalent" of end-office switching is an area of uncertainty in federal telecommunications law, hence the district court's referral of this issue to the FCC. *See AT&T Corp. v. Fed. Commc'ns Comm'n*, 841 F.3d 1047, 1049 (D.C. Cir. 2016) (vacating an FCC declaratory ruling that VoIP providers and LECs partner to provide the functional equivalent of end-office switching).

tariff and telecommunications law, Peerless billed terminating switched-access rates for routing calls to two-stage calling providers, such as calling card services, even though those calls continue and are terminated somewhere else, for example, internationally. These complicated concepts can be distilled into a simple allegation: Peerless is billing Verizon for services it is not providing. And, unlike a pure unreasonable-rate challenge, such an allegation can serve as a defense, not just a counterclaim.

Yet, the district court conflated Verizon's defenses and counterclaims. It overlooked that the VoIP and two-stage arguments serve not only as a basis to recover past-paid amounts under Verizon's counterclaims; they also serve as defenses to the allegations that Verizon owes outstanding amounts to Peerless—defenses that would undercut any amount that Verizon purportedly owes Peerless. The district court must resolve any defenses in order to fully adjudicate Peerless's breach-of-tariff claims and determine what Peerless is legally entitled to bill Verizon for. But here, it cannot—like Verizon's counterclaims, the resolution of Verizon's defenses turns on the issues pending before the FCC. That these defenses cannot yet be resolved shows again that Rule 54(b) partial final judgment is inappropriate here.

Because the district court erred in granting partial final judgment on Peerless's breach-of-tariff claims, we vacate the Rule 54(b) judgment on Counts III through V and XI. Under 28 U.S.C. § 1291, this court has jurisdiction only over "final decisions," therefore, the appeal as to these counts must be dismissed for want of jurisdiction.

**B. The Contract Claims**

Verizon does not contend, and we do not conclude, that the district court erred in ordering Rule 54(b) partial final judgment for Counts I and II, which alleged a breach of the Tandem Service Agreement. The amounts Verizon allegedly owes under the agreement are not tied to Peerless's tariffs, they are based on discounted, contractually agreed-upon rates. Thus, unlike the tariff claims, these breach-of-contract claims "rely on entirely different legal entitlements" than the tariff-related counterclaims still pending in the district court. *Marseilles*, 518 F.3d at 464. Judgment on Counts I and II is properly considered final.

The district court did not specifically address the breach-of-contract claims in concluding that there was no just reason to delay final judgment. Understandably so—the tariff claims made up the vast majority of this nearly $50 million complex lawsuit. But the district court's determination that Peerless's interest in prompt payment outweighed the risk that Verizon may be entitled to a refund presumably applied to the contract claims as well as the tariff claims. That was not an abuse of discretion. It is unclear how long the remaining issues will be pending before the FCC, delaying the resolution of these entirely separate breach-of-contract counts. Therefore, Rule 54(b) partial final judgment was appropriate on Counts I and II, and we have jurisdiction to address the merits of Verizon's appeal as to these counts.

Verizon argues that the district court erred in granting summary judgment for Peerless on these counts. We review grants of summary judgment *de novo*. "Summary judgment is appropriate when there is no genuine dispute as to a material fact." *Estate of Jones v. Children's Hosp. & Health Sys. Inc.*

*Pension Plan*, 892 F.3d 919, 923 (7th Cir. 2018). When both parties have moved for summary judgment, "we construe all inferences in favor of the party against whom the motion under consideration is made." *Schlaf v. Safeguard Prop., LLC*, 899 F.3d 459, 465 (7th Cir. 2018) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

The district court concluded that summary judgment for Peerless was appropriate because, supposedly, Verizon did not dispute that it had failed to pay charges owed under the Tandem Service Agreement—Verizon disputed only the amount of damages. The record says otherwise. In the proceedings below, Verizon acknowledged Peerless's allegations that it owed outstanding amounts under the Tandem Service Agreement. Verizon responded, however, that Peerless had failed to specifically identify any unpaid invoices. Verizon also submitted an affidavit from a Senior Manager of Invoice Validation attesting that she was unaware of which invoices purportedly reflected any outstanding amount. Viewing the facts in the light most favorable to Verizon, as we must, the conflicting evidence creates a genuine dispute as to whether Verizon owes any unpaid amount under the Tandem Service Agreement.

Peerless argues that because Verizon and Peerless jointly stipulated to a damages amount for the breach-of-contract claims, Verizon cannot now challenge the district court's determination of liability on these counts. Peerless is incorrect, the stipulation is irrelevant. By that point, the district court had already found against Verizon on the issue of liability, and we allow parties to challenge a determination of liability even if they later stipulate to damages. *See, e.g., Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir. 1996). We

conclude that the district court erred in its liability determination and improperly granted summary judgment for Peerless on Counts I and II, alleging a breach of the Tandem Service Agreement.

### III. Conclusion

The district court erred in entering partial final judgment under Rule 54(b) on Counts III through V and XI. We VACATE the Rule 54(b) judgment on those counts and DISMISS the appeal of those counts for want of jurisdiction. We also conclude that the district court erred in granting summary judgment on Counts I and II, and we REVERSE and REMAND for further proceedings on those counts consistent with this opinion.