In the

# United States Court of Appeals
### For the Seventh Circuit

No. 21-2894

ERIC D. HOVDE and STEVEN D. HOVDE,

*Plaintiffs-Appellants*,

*v.*

ISLA DEVELOPMENT LLC and JEFFREY T. RIEGEL,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-07323 — **Franklin U. Valderrama**, *Judge*.

ARGUED APRIL 13, 2022 — DECIDED OCTOBER 24, 2022

Before ROVNER, WOOD, and ST. EVE, *Circuit Judges*.

ROVNER, *Circuit Judge*. Jeffrey Riegel sought to build a condominium development in Isla Mujeres, and toward that end he formed ISLA Development LLC ("ISLA") and secured a loan of millions of dollars from Steve and Eric Hovde. That project, however, ultimately failed, and more than ten years later, the Hovdes filed suit seeking to recover their funds from ISLA and Riegel.

Riegel formed ISLA in 2004 and acted as its manager and sole member. In exchange for the loan from the Hovdes, ISLA promised to pay the Hovdes a 25% interest rate, and Riegel agreed to act as a guarantor. Financial problems eventually shut down the project and the Hovdes sued ISLA and Riegel. The district court granted summary judgment to the defendants as to the claim based on the Mortgage Note ("Note"), holding that the claim was brought beyond the expiration of the ten-year statute of limitations period. That left the claim against Riegel based on his status as a guarantor. The district court initially held that the case could proceed as to Riegel, but a different district court judge who subsequently took over the case determined that the statute of limitations could be asserted in the action against the guarantor as well, holding that a waiver did not operate to block that defense and the claim against Riegel was therefore untimely. The Hovdes now appeal those grants of summary judgment.

We turn first to the claim based on the obligations under the Note. By its terms, the Note provided that the principal and interest on the loans would be due in June 2007, but the Note's event-of-default acceleration clause provided that if an Event of Default occurred, "the outstanding unpaid principal balance of the Note, the accrued interest thereon and all other obligations of the Borrower to the Bank under the Loan Documents shall automatically become immediately due and payable," thus triggering the ten-year statute of limitations.

One such "Event of Default" specified in the contract was if an "Act of Bankruptcy shall occur," and "Act of Bankruptcy" is defined in the contract to include if ISLA or Riegel "admit in writing its inability to pay its debts as they mature." The district court properly held that two emails sent by Riegel

to the Hovdes constituted an admission in writing of an inability to pay the debts and therefore an event of default. In an email on August 7, 2008, to Steven Hovde, Riegel revealed that a tax bill of $137,000 had to be paid by August 18, that he had been buying time with the tax officials most of the spring and summer but that it was now absolute and non-negotiable, and that he needed an advance of $250,000 just to make it until an anticipated closing in mid-September. Steven Hovde responded on August 11 that he had no more money to give and that the last time he lent money he had told Riegel to shut the project down and that they would not lend any additional amounts. On September 2, Riegel sent another email, stating that he had pursued financing options but that "[a]t this point in time, my resources are exhausted." In that email he detailed the financial challenges, including stating that as of two weeks prior all construction workers were suspended and that the management team was kept on but was not paid that past Friday, and that if all construction workers and management staff were terminated that day then outstanding severance and federal taxes would total another $200–250,000. He further stated that funds of $75,000 were needed by Wednesday morning "to avoid having Social Security persons in Mexico shut down the entire operation immediately." He continued that he was told that trucks would be coming to confiscate all computer equipment from the offices and other assets and materials at the construction site to pay the social security bill owed, and that "[s]uch an action would be the instant death of the project." He concluded by stating that he was "a very 'stand up' guy but at this point, with no resources of my own, I would not be able to attempt re-assembling a team on the ground."

The district court did not err in holding that the language of the emails met the contract language of an admission in writing of an inability to pay his debts as they mature. Although the Hovdes argue that Riegel was continuing to seek alternative funding sources, and that the property itself and other assets still had some value, that does not alter the conclusion that the emails constituted an admission of an inability to pay the debts. The language does not require actual insolvency; it merely requires an admission of an inability to pay the debts as they mature—whether or not true—and the court properly held that the language in the emails constituted that admission. Accordingly, the statute of limitations began to run as of September 2, 2008.

The Hovdes next argue that a Forbearance Agreement of November 5, 2008, constituted a "new promise to pay" that restarted the ten-year limitations period, thus making the November 2, 2018, lawsuit timely. Riegel argues that this claim was never presented to the district court and therefore is waived. In response to that contention, the Hovdes did not identify any part of the record raising the legal theory that the Forbearance Agreement constituted a new promise to pay. Instead, they argued that the court was presented with the relevant facts, including the existence of the Forbearance Agreement, and that the applicable statute was before the court as well, "even if the precise 'new promise to pay' phrase was not used by the parties." Appellant's Reply Brief at 1. But those facts were raised only with respect to a distinctly different argument, which was that the Forbearance Agreement temporarily tolled the running of the statute of limitations thus extending the ten-year limit. The district court rejected that argument because even if the period was tolled during the forty-two days that the Forbearance Agreement was in effect,

the Hovdes would have had to bring the claim by October 18, 2018, and the claim filed on November 2, 2018, therefore was still untimely. The argument that the Hovdes assert here, that the Forbearance Agreement was a new promise to pay that triggered a new 10-year limitations period, was never asserted below, and is inconsistent with the argument actually made below. To the extent that the Hovdes are arguing that the court could have put together the Forbearance Agreement and the limitations period and fashioned such an argument, that is not the court's role. The argument that the Forbearance Agreement constituted a new promise to pay was never argued to the district court at all and therefore is not properly raised on appeal. *Compare Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925–26 (7th Cir. 2019) (holding that an issue cannot be raised on appeal if the party failed to make the specific argument below even if the issue may have been before the district court in more general terms), *and Domka v. Portage Cty., Wis.*, 523 F.3d 776, 783 (7th Cir. 2008) (holding that an argument was waived where the specific argument was never presented to the district court but a different one arising out of the same facts was argued), *with United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008) (argument not forfeited on appeal where the argument was presented in the district court but a new twist in support of that argument is presented on appeal). Accordingly, the court properly granted summary judgment on that claim as untimely.

Finally, the Hovdes argue that the district court erred in determining that the claim against Riegel with respect to the guaranty was also untimely. The district court initially held that the guaranty by its language waived all defenses, and therefore that Riegel's reliance on the defense of the statute of limitations was waived as well. The court later revisited the

issue, and held that the waiver in the guaranty did not operate to preclude reliance on the statute of limitations, and that the claim against Riegel based on the guaranty was untimely.

The Hovdes now argue that the court erred in holding that the statute of limitations defense was not waived in the guaranty agreement. There are two provisions in the guaranty that are relied upon for this issue. First, the language in the guaranty provides: "[t]his guaranty shall in all respects be continuing, absolute and unconditional, and shall remain in full force and effect with respect to any Guarantor until satisfaction in full of the Borrower's Liabilities." The second provision sets forth the waiver of defenses, and although the parties consider only the last part of the provision (bolded in the text below), examination of the whole provision is helpful to provide context:

> **Guarantor hereby agrees that, except as hereinafter provided, its obligations under this Guaranty shall be unconditional, irrespective of** (i) the validity or enforceability of Borrower's Liabilities or any part thereof, or of any promissory note or other document evidencing all or any part of Borrower's Liabilities, (ii) the absence of any attempt to collect Borrower's Liabilities from Borrower or any other guarantor or other action to enforce the same, (iii) the waiver or consent by Lenders with respect to any provision of any instrument evidencing Borrower's Liabilities, or any part thereof, or any other agreement heretofore, now or hereafter executed by Borrower and delivered to Lenders, (iv) failure by Lenders to

> take any steps to perfect and maintain its security interest in, or to preserve its rights to, any security or collateral for Borrower's Liabilities, (v) the institution of any proceeding under Chapter 11 of Title 11 of the United States Code (11 U.S.C. §101 et seq.), as amended (the "Bankruptcy Code"), or any similar proceeding, by or against Borrower, or Lender[s'] election in any such proceeding of the application of Section 1111(b)(2) of the Bankruptcy Code, (vi) any borrowing or grant of a security interest by Borrower as debtor-in-possession, under Section 364 of the Bankruptcy Code, (vii) the disallowance, under Section 502 of the Bankruptcy Code, of all or any portion of Lender[s'] claim(s) for repayment of Borrower's Liabilities, or **(viii) any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor**.

(emphasis added). The issue here is whether those provisions waive the statute of limitations defense, or whether more explicit language referencing the statute of limitations is needed in order to waive it.

A guaranty is a contract and therefore is analyzed under standards governing contract interpretation in general. *Blackhawk Hotel Assocs. v Kaufman*, 421 N.E.2d 166, 168 (Ill. 1981); *T.C.T. Bldg. P'ship v. Tandy Corp.*, 751 N.E.2d 135, 139 (Ill. App. 2001). "A guarantor is given the benefit of any doubt which may arise from the language of the contract; his understanding is strictly construed; his liability may not be varied or extended beyond its precise terms by construction or

implication; and he is bound only to the extent and in the matter and under the circumstances pointed out in his obligation." *Exch. Nat. Bank of Chi. v. Bergman*, 505 N.E.2d 1236, 1238 (Ill. App. 1987); *T.C.T. Bldg. P'ship*, 751 N.E.2d at 139–40 (holding that "a guaranty is to be strictly construed in favor of the guarantor such that the guarantor is accorded the benefit of any doubt that arises from the contract language.") If the terms of a contract present no ambiguity, they will be given effect as written. *Id.*

The parties rely on different lines of reasoning in Illinois cases. The Hovdes point to cases holding that guaranties, like any other contract, should be given their plain meaning, and that waivers in guaranties should therefore be enforced where they are clear and unambiguous. *See Chrysler Credit Corp. v. Marino*, 63 F.3d 574, 577 (7th Cir. 1995); *BA Mortg. & Int'l Realty Corp. v. Am. Nat. Bank & Tr. Co. of Chi.*, 706 F. Supp. 1364, 1376 (N.D. Ill. 1989). They argue that the language in the guaranty encompasses legal or equitable defenses, and therefore includes the statutes of limitations defense.

Riegel, in contrast, points to cases refusing to enforce general waivers where an important statutory right is at issue and finding a waiver for such circumstances only where it is explicit. *See Gallagher v. Lenart*, 874 N.E.2d 43, 62 (Ill. 2007). Under that reasoning, only a waiver that explicitly includes "statutes of limitations" would be effective to waive it. That requirement of explicit language, which was applied to "important statutory rights," has never been applied in the context of statutes of limitations, but Riegel asserts that the reasoning would extend to that context.

We need not determine whether a waiver of the statute of limitations must be explicit to that defense, because even if

more general waiver language can be sufficient, the language here does not suffice. Any review of a contract begins with the plain language, and the language of the alleged waiver here by its terms does not encompass the statute of limitations defense. The language relied upon by the Hovdes provides that the "guaranty shall in all respects be continuing, absolute and unconditional, and shall remain in full force and effect with respect to any Guarantor until satisfaction in full of the Borrower's Liabilities" and that a guarantor's "obligations under this Guaranty shall be unconditional, irrespective of … any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor."

In guaranty agreements the terms "unconditional" and "absolute" are terms of art. Unlike a conditional guaranty, "[a]n unconditional guaranty does not require a creditor to attempt collection from the principal debtor before looking to the guarantor." *N. Tr. Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1105 (Ill. App. 1995), citing *United States v. Shirman*, 41 F.R.D. 368, 372 (N.D. Ill. 1966); 38 Am. Jur. 2d *Absolute or conditional guaranty* § 13 (2022) ("A guaranty that is absolute and unconditional is one that requires no condition precedent to its enforcement against the guarantor other than mere default by the principal debtor; such a guaranty is also called a guaranty of payment"); *In re Clore*, 547 B.R. 915, 922 (Bankr. C.D. Ill. 2016) (stating that "as used in guaranty agreements, the terms 'absolute' and 'unconditional' are recognized terms of art designed to exclude any and all contractual conditions.") Therefore, the above provisions make clear that the obligations of the guarantor are one of payment not collection and are not conditioned upon the failure of efforts to collect the payment from the principal debtor.

The Hovdes acknowledge that the terms "continuing, absolute, and unconditional" are terms of art when used in guaranties. They argue, however, that the language that the guaranty is "in all respects … continuing, absolute and unconditional" and "shall remain in full force and effect" until the satisfaction of the borrowers' liabilities, indicates that Riegel's obligations remain ongoing regardless of the statute of limitations. That language certainly makes clear that the guaranty requires no condition precedent to its enforcement against the guarantor other than mere default by the principal debtor, and that its obligation does not terminate until the debt is paid. But it says nothing as to whether an action to enforce that guaranty can be maintained outside the statute of limitations.

The Hovdes maintain that such language is sufficient to waive the statute of limitations defense when combined with the language waiving legal and equitable defenses. We turn, then, to the precise language in that separate provision, which states that "the Guarantor agrees that, except as hereinafter provided, *its obligations under this Guaranty shall be unconditional, irrespective of* … (vii) any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor." (emphasis added) As the italicized language makes clear, all of the subsections, including the waiver of defenses, are relevant only insofar as they would relate to the unconditional nature of the obligation. In other words, the provision ensures that the guaranty shall be unconditional and that no legal or equitable defense can alter the status of the obligations as unconditional. In keeping with that focus on the nature of the guarantor's obligations, the specific examples that follow relate to the obligations of the guarantor. In fact, all of the subsections that follow make clear

that the obligations of the guarantor, Riegel, are unconditional regardless of the actions of the lender, the Hovdes, with respect to the borrower, ISLA. Thus, those listed provisions declare that Riegel's obligations are not impacted by: (i) the validity or enforceability of ISLA's liabilities; (ii) the failure to attempt to collect from ISLA; (iii) any waiver or consent by the Hovdes with respect to ISLA's liabilities; (iv) any failure by the Hovdes to take any steps to perfect and maintain its security interest in, or to preserve its rights to, any security or collateral for ISLA's liabilities; (v) any bankruptcy proceeding by or against ISLA, or the Hovdes' election in any such proceeding; (vi) any borrowing or grant of a security interest by ISLA as debtor-in-possession under the Bankruptcy Code; (vii) or the disallowance under the Bankruptcy Code of any portion of the Hovdes' claim for repayment of ISLA's liabilities. The listed provisions, in short, make clear that Riegel's obligation is independent of and unaffected by the obligations of ISLA and any actions of the Hovdes with respect to ISLA.

The "catch-all" provision in subsection (viii) concludes that section, providing that Riegel's obligations "shall be unconditional, irrespective of … (viii) any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor." As with the provision that precedes it, that subsection makes clear that any other circumstances that a guarantor otherwise could assert as a legal defense or a discharge cannot operate to alter the unconditional nature of the guarantor's obligation. In other words, the unconditional nature of the obligation cannot be impacted by any such defenses.

That language could operate to waive any defenses that would otherwise render the guarantor's obligation

conditional. But its scope is limited to that context. It addresses only the preservation of the unconditional nature of the obligation; it does not address defenses unrelated to that issue.

But the statute of limitations does not impact the unconditional nature of the obligation. In fact, it does not impact the obligation itself—unconditional or otherwise—at all. Illinois, like many states, recognizes that the statute of limitations is not a defense that impacts a party's *obligation*; it merely impacts the *enforceability* in court of that obligation. *See Fleming v. Yeazel*, 40 N.E.2d 507, 508 (Ill. 1942) (holding that statutes of limitations "bar the right to sue to recover but do not extinguish the debt or the property right"); *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1411–12 (2017) (recognizing that under the law of many states, the right to payment remains after the limitations period expires, and distinguishing a claim or obligation, which survives the limitations period, from an "enforceable" claim or obligation); *see also Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 684 (7th Cir. 2017) (holding that most states treat a debt as a legal obligation even after the statute of limitations has run even though that limitations period means it can no longer be legally enforced); *Tinsley v. Consumer Adjustment Co., Inc.*, 2020 WL 1558105, at *4 (C.D. Ill. Apr. 1, 2020) (citing *Pantoja*, noting that "most states—including Illinois—do not extinguish or invalidate debts even after the statute of limitations has run, and creditors generally retain the legal right 'to appeal to the debtor to honor the debt out of a sense of moral obligation even if the legal obligation can no longer be enforced in court'"); *Stimpson v. Midland Credit Mgmt, Inc.*, 944 F.3d 1190, 1199 (9th Cir. 2019) (noting that "[i]n most states, a statute of limitations does not extinguish a party's rights, but merely precludes a judicial

remedy”); 54 C.J.S. *Limitations of Actions* § 20 (2022) (noting that a statute of limitations bars only the remedy in an action to collect on a debt but that a creditor retains the right to payment of debt even after the limitations period has expired). The language of the waiver states that the guarantor's obligation is unconditional irrespective of any legal defense of the guarantor. That language is therefore exceedingly narrow, keyed by its terms to prohibit only circumstances that would render the guaranty obligation conditional. Nothing in the statute of limitations defense renders the guarantor's obligation conditional; it merely renders the unconditional obligation unenforceable in a court. Language in a guaranty contract must be given effect as written, and any ambiguity must be interpreted in a manner favoring the guarantor. *T.C.T. Bldg. P'ship*, 751 N.E.2d at 139–40. Because the statute of limitations does not address the obligation, it is not included in a waiver limited to defenses or discharge that would impact the unconditional nature of the guaranty.

The language at issue here stands in contrast to more expansive language that courts frequently encounter in waivers, in which the language applies not only to defenses as to the obligation itself but also to defenses to liability or enforcement. *See Intl. Supply Co. v. Campbell*, 907 N.E.2d 478, 481–82 (Ill. App. 2009) (guaranty waived “all legal and equitable defenses *regarding enforcement* of the personal guarantee”); *FIMSA, Inc. v. Unicorp Fin. Corp.*, 759 F. Supp. 1297, 1300 (N.D. Ill. 1991) (“the undersigned … waives every defense, counterclaim or setoff … *to any action by FIMSA in enforcing this guaranty*); *WEC 98C-3 LLC v. Saks, Inc.*, 2022 WL 474204, *4 (N.D. Ill. Feb. 16, 2022) (guaranty provided that “*the liability and obligation* of Guarantor … shall not be subject to any … defense); *Morris v. Columbia Nat. Bank of Chi.*, 79 B.R. 777, 781 (N.D. Ill.

1987) (guaranty provided that "[e]ach of the undersigned waives every defense, counterclaim, or setoff which any of them may now have or hereafter may have *to any action by the holder in enforcing* this guaranty."); *BA Mortg. & Intl. Realty*, 706 F. Supp. at 1376 (guaranty waived "[a]ny defense … that the Guarantors … may or might have *to its respective* under-takings, *liabilities and obligations* hereunder, each and every such defense being hereby waived by the undersigned Guar-antors."); *RBS Citizens, Nat. Assn. v. RTG-Oak Lawn, LLC*, 943 N.E.2d 198, 203 (Ill. App. 2011) (forbearance agreement pro-vided that the borrower has "no claims or defenses *to the en-forcement of the right and remedies* of Lender thereunder") (em-phasis added in all parentheticals). The language in this case does not waive all defenses to enforcement or to the legal ac-tion or to liability; it provides only that the obligation remains unconditional irrespective of any circumstances that would otherwise constitute a defense or discharge. Because the stat-ute of limitations defense does not operate to absolve a person in a contract from the obligation but merely renders that obli-gation unenforceable in court because not timely brought, the language does not preclude the assertion of that defense by its plain language. Accordingly, the district court did not err in determining that the claims were barred by the statute of limitations.

    The decision of the district court is AFFIRMED.