In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 23-1489

WEC 98C-3 LLC,

*Plaintiff,*

*and*

4 STRATFORD SQUARE MALL HOLDINGS, LLC,

*Plaintiff-Intervenor-Appellee,*

*v.*

SFA HOLDINGS INC., formerly known as
SAKS INC.,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-04356 — **Harry D. Leinenweber**, *Judge.*

_____

ARGUED DECEMBER 7, 2023 — DECIDED APRIL 24, 2024

_____

Before WOOD, KIRSCH, and JACKSON-AKIWUMI, *Circuit
Judges.*

JACKSON-AKIWUMI, *Circuit Judge*. This case involves two contracts, three litigants, four companies, and millions of dollars of unpaid rent. CPS Partnership operated a department store at an Illinois mall for over thirty years. The corporate entities changed over those years but suffice it to say that CPS leased the retail space from a company called WEC 98C-3 LLC, and Saks[1] guaranteed that it would pay the rent if CPS could not. But when CPS stopped paying rent, Saks did not send WEC a single payment. The lost income caused WEC to default on its mortgage, and 4 Stratford Square Mall Holdings, LLC ("Stratford"), the successor in interest to WEC's mortgagee, purchased the property at the foreclosure auction. Initially, WEC sued Saks for damages. Later, Stratford intervened with its own distinct claim for damages. The district court ruled only on Stratford's claim for unpaid rent, finding that it was entitled to payment from Saks. Stratford then waived its claim for non-basic rent damages, and the district court certified the judgment in favor of Stratford for immediate appeal pursuant to Federal Rule of Civil Procedure 54(b).

Saks took up the invitation and urges us to reverse. On the jurisdictional grounds for reversal that Saks raises, we conclude that Stratford did have standing to sue Saks even though it entered the story much later, and the district court did properly certify its judgment for appeal under Federal Rule of Civil Procedure 54(b). On the merits, we conclude that Saks cannot mount any of its desired defenses: It waived its right to present affirmative defenses to liability in the

---

[1] The company originally known as Saks Holdings, Inc., merged with Proffitt's, Inc., in 1998 to form Saks Inc. Saks Inc. then changed its name to SFA Holdings during this litigation. We refer to the entity as "Saks" throughout this opinion.

guaranty that it signed. We therefore affirm the district court's judgment.

**I**

At the heart of this dispute is a rental contract between CPS and WEC that Saks guaranteed. In 1985, CPS signed a lease with WEC to operate a Carson Pirie Scott Department Store at the Stratford Square Mall in Bloomingdale, Illinois. Under the lease terms, CPS agreed to pay WEC rent in monthly installments plus a penalty on any overdue rent. The parties agreed that the penalty would amount to

> a rate of interest equal to the lesser of: (a) the maximum amount of interest permitted under applicable state law, or (b) the greater of (i) four percent (4%) in excess of the yield, from time to time, as quoted daily in the Wall Street Journal (or if the same is not then published, another similar national journal selected by Landlord), of U.S. Treasury Bonds having an maturity closest to that date which is ten (10) years after the date of the Event of Default, or (ii) sixteen percent (16%) per annum.

CPS and WEC amended the lease twice, in 1994 and 1998. The second amendment, which extended the rental period through January 2024, is when Saks entered the picture. At the same time WEC signed the second amendment, it entered into a corporate guaranty agreement with Saks's predecessor in interest, Proffitt's, Inc. Under the terms of the guaranty, if CPS defaulted on its rent, Saks, as its guarantor, would pay the outstanding rent on CPS's behalf. The guaranty

established that "the liability and obligation of Guarantor hereunder shall be absolute and unconditional" and "not subject to any reduction, limitation, termination, defense, offset, counterclaim or recoupment" because of CPS's bankruptcy, default, or lease rejection.

For the next twenty years, CPS reliably paid rent to its landlord WEC. But in 2018, CPS's parent company, Bon-Ton Stores, filed for bankruptcy. CPS defaulted on its February 2018 rent, and then rejected the lease entirely in August 2018. So WEC asked Saks to pay the outstanding rent. Saks did not, even though Saks had reaffirmed its obligation as a guarantor as recently as 2017.

With neither CPS nor Saks paying rent, WEC fell into arrears on its mortgage. WEC's mortgagee (Stratford's predecessor in interest) initiated foreclosure proceedings, and Stratford purchased the property at public auction. Bereft of its property, in July 2020, WEC sued Saks for breach of the guaranty. In October 2020, Stratford, who now owned the property, intervened to assert its own breach of guaranty claim against Saks.

At the time, the district court was overseeing an unrelated case in which a different party was attempting to hold Saks liable for breaching a guaranty with identical language to the guaranty at issue here. *See WEC 98C-4 LLC v. Saks Inc.*, No. 20 C 4363, 2021 WL 5280947 (N.D. Ill. Nov. 12, 2021). In that case, the district court granted summary judgment to the party in Stratford's position, ruling that Saks could not assert affirmative defenses to liability. *See id.* at *4–5. Consequently, when Stratford moved for summary judgment in the instant case, the district court granted the motion with heavy reliance on the reasoning from the court's other summary judgment

decision. The court ruled that Saks was liable to Stratford for CPS's unpaid rent from February 2018 through September 2022, plus 9% interest on that unpaid rent pursuant to the penalty provision. Finding no just reason for delay, the court certified its judgment as final for appeal.

Saks now appeals, arguing that (1) Stratford lacked standing to bring its claim, (2) the district court erred in certifying its judgment in favor of Stratford for immediate appeal pursuant to Rule 54(b), and (3) the district court erred in rejecting Saks's affirmative defenses. We evaluate each argument in turn.

## II.

We begin with Saks's contention that Stratford lacked standing to sue for rent owed before Stratford even purchased the property. To establish standing, Stratford must show that it "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A district court may only dismiss a case for lack of standing when "there are no set of facts consistent with the complaint's allegations that could establish standing." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005).

Saks claims that Stratford failed to show that it suffered an actual, concrete, and particularized injury because it did not establish it had the right to recover rent for the period before it owned the property. Saks is incorrect.

Under Illinois law, a mortgagor may include an assignment-of-rent clause in the mortgage, which gives the

mortgagee an interest in any rent the mortgagor is entitled to once the mortgagee gains possession of the property. *See Matter of Wheaton Oaks Office Ltd. P'ship*, 27 F.3d 1234, 1242 (7th Cir. 1994). Such affirmative action may include actual possession of the mortgaged property or constructive possession by seeking a court-appointed receiver. *See BMO Harris Bank N.A. v. Joe Contarino, Inc.*, 2017 IL App (2d) 160371, ¶ 42.

Stratford demonstrated that the mortgage included an assignment-of-rent clause and that it had constructive and actual possession of the property. Stratford produced WEC's mortgage agreement, which assigned Stratford's predecessor in interest the right to CPS's lease and Saks's guaranty agreement. The mortgage also provided that the mortgagee could apply for a receiver to enforce its rights. When CPS rejected the lease, the Illinois court appointed a receiver, giving Stratford's predecessor in interest constructive possession and the right to the outstanding rent. *See id.* And when Stratford's predecessor in interest foreclosed on the property, the foreclosure included "all personal property subject to the security interest held by" the mortgagee. Stratford then gained actual possession of the property and the interest in the rent when it purchased the foreclosed property in February 2020. As a result, Stratford owns the mortgagee's interest in the lease and guaranty. Saks's failure to abide by the guaranty harmed Stratford by depriving it of the rent to which it was entitled. That concrete harm satisfies our standing inquiry.

### III.

We next consider Saks's assertion that the district court erred in certifying its judgment for appeal. Under Rule 54(b) of the Federal Rules of Civil Procedure, a district court "may direct entry of a final judgment as to one or more, but fewer

than all, claims or parties only if the court expressly deter-mines that there is no just reason for delay." Appellate courts employ a two-step framework to evaluate whether a district court properly certified a judgment under Rule 54(b). First, we review de novo whether the district court's order "was truly a final judgment." *Peerless Network, Inc. v. MCI Commc'ns Servs. Inc.*, 917 F.3d 538, 543 (7th Cir. 2019). Next, we ask "whether the district court abused its discretion in finding no just reason to delay the appeal of the claim that was finally decided." *Id.* Appellate courts give "[s]ome deference" to the opinion of the district court "that the Rule 54(b) requirements are satisfied." 10 Wright, Miller & Kane, *Federal Practice and Procedure* § 2655 (4th ed. 2023) (citing cases).

### A. Finality

A judgment is final under Rule 54(b) when it constitutes "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). If a party challenges a Rule 54(b) certification, we consider "whether there is too much factual overlap with claims remaining in the district court." *Peerless Network, Inc.*, 917 F.3d at 543. "Even if two claims arise from the same event or occurrence, they may be separable for Rule 54(b) purposes if they rely on entirely different legal en-titlements yielding separate recoveries, rather than different legal theories aimed at the same recovery." *Marseilles Hydro Power, LLC v. Marseilles Land & Water Co.*, 518 F.3d 459, 464 (7th Cir. 2008).

Saks advances two theories why the district court's judg-ment was not final. First, it contends that Stratford has out-standing claims against Saks. Second, it asserts that WEC and

Stratford have overlapping claims against Saks. Neither theory wins the day.

### 1. Stratford's allegedly outstanding claims

To understand Saks's first theory, some background on Stratford's lawsuit is necessary. In its intervenor complaint, Stratford alleged that Saks failed to honor its guaranty obligation, and Stratford sought money damages as a result. The district court resolved Stratford's claim in its entirety by determining that Saks was liable under the guaranty and ordering Saks to pay damages for unpaid basic rent from February 2018 through September 2022, the last month for which rent was owed at the time of the court's judgment.

On appeal, Saks argues that even though the district court awarded damages for the entire period under consideration, the judgment was not final because the court did not resolve whether Saks owes Stratford rent through January 2024, the end of the lease period. According to Saks, because Stratford told the district court that it "reserves the right to seek recovery of these rents at a later date," Stratford still has unresolved claims against Saks.

In essence, Saks argues that Stratford is limited to bringing a single action for all the rent Saks could possibly owe. But that is not the law in Illinois. (The parties agree that Illinois state law applies. *See Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.").)

In Illinois, landlords can sue for rent as the rent comes due. The Illinois Supreme Court has held that, "in the case of a judgment for the payment of money in periodic install-ments[,] a right of action accrues *on each installment as it*

*becomes due*, and [] the period of limitations runs on each installment only from the time it becomes due." *Light v. Light*, 12 Ill. 2d 502, 506 (1957) (emphasis added). Contracts for monthly rental payments give landlords "the right to sue for the installments as they come due, the right to sue for several installments that have accrued, and the right to sue for the entire amount due at the end of the term." *Dorris v. Ctr.*, 284 Ill. App. 344, 349 (1936). *See also Miner v. Fashion Enterprises, Inc.*, 342 Ill App. 3d 405, 417 (2003) ("[A] lessor has the options of suing for rent as they come due, suing for several accrued installments, or suing for the entire amount at the end of the lease term.").

Stratford chose the second option—suing for several installments that had accrued—and the district court resolved that claim. If Saks continues to refuse to honor the guaranty, Stratford could bring a new claim. Or Saks could pay what it owes and avoid future litigation. Either way, the hypothetical possibility of future litigation does not mean that the district court failed to resolve the claim in front of it. Saks in fact concedes that Stratford can sue for one or more installments of outstanding rent, calling it a "vanilla proposition." Saks cannot credibly claim that Stratford presently has outstanding claims against Saks.

## 2. Stratford's and WEC's allegedly overlapping claims

Saks's second theory why the district court's judgment was not final rests on the notion that both Stratford and WEC seek unpaid rent. Therefore, Saks argues, the companies'

claims are inextricably intertwined, and the district court did not enter a final judgment.

In order to evaluate Saks's argument, we need to take a closer look at what happened in the district court. When Stratford intervened in this litigation, both Stratford and WEC did claim the right to overdue rent, so their claims indeed overlapped. But that changed when WEC subsequently disclaimed on the record its right to collect unpaid basic rent. At a November 8, 2022, hearing on Stratford's motion for entry of final judgment, WEC stated, "We're not making a claim for a basic rent claim as in the related case. It's for consequential damages."

On the record before us, we are satisfied that there is no overlap between damages for unpaid basic rent (what Stratford sought and was awarded) and consequential damages (what WEC seeks). Both the lease and the guaranty anticipate the existence of damages separate and apart from any unpaid rent. The lease provides that the landlord may be owed "reasonable attorneys' fees and expenses," for example, and Saks agreed under the guaranty to pay "all damages and all costs and expenses that may arise in consequence" of CPS's failure to pay rent. WEC itself told the district court that it expected consequential damages to consist of "attorneys' fees that [WEC] incurred as a result of the foreclosure in this case and the loss in value and the equity of the property that [WEC] incurred as a result of the foreclosure." Unpaid rent is only relevant to WEC's claim as a backdrop against which it suffered consequential damages. WEC's and Stratford's claims therefore amount to "entirely different legal entitlements yielding separate recoveries." *Marseilles Hydro Power, LLC*, 518 F.3d at 464. WEC's remaining claim will neither

strengthen nor weaken Stratford's rights against Saks, making the claims separable for Rule 54(b) purposes.

Certification under Rule 54(b) would only be inappropriate, then, if WEC's on-the record oral waiver of its claim to basic rent had no effect. Saks provides no authority suggesting that this is the case. On the contrary, we have repeatedly credited such waivers. *See, e.g.*, *Portalatin v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 900 F.3d 377, 381 (7th Cir. 2018) ("In September 2015, Portalatin expressly abandoned her claim for actual damages against Blatt; her attorney stated in open court that they were only seeking statutory damages."); *Miller v. Willow Creek Homes, Inc.*, 249 F.3d 629, 631 (7th Cir. 2001) ("A waiver, which can be either expressed or implied, is an intentional relinquishment of a known right. Here, the requirements of waiver are easily satisfied. In open court, the Millers' attorney announced that he had conferred with the Millers and that they decided not to proceed with the Magnuson-Moss claims." (internal citation omitted)); *McCoy v. WGN Cont'l Broad. Co.*, 957 F.2d 368, 370 (7th Cir. 1992) ("McCoy appeals the judgment below only insofar as it rejects his discriminatory demotion and discharge claim, having expressly abandoned his retaliatory discharge claim at oral argument.").

In sum, WEC waived its right to unpaid basic rent, distinguishing its claim from Stratford's. That left the district court free to certify its judgment on Stratford's claim as final for appeal. The court's final judgment resolves only Stratford's claim and says nothing about WEC's rights. WEC remains free to pursue its claim for consequential damages before the district court. The district court correctly determined that

Stratford and WEC had distinct claims against Saks and properly entered final judgment pursuant to Rule 54(b).

## B. Abuse of discretion

Having determined that the district court's order was indeed a final judgment, we commence step two and evaluate whether the court abused its discretion by finding no just reason to delay certification under Rule 54(b). We will overturn a district court's certification for abuse of discretion only if the certification was "clearly unreasonable." *Curtiss-Wright Corp.*, 446 U.S. at 10. We cannot find that the certification here was. The district court resolved Stratford's claim, and correctly determined that Saks had prejudiced Stratford by refusing to pay rent for over five years. We conclude that further litigation on this point would not serve "judicial administrative interests" or the parties' interests. *See id.* at 8. Accordingly, the district court did not abuse its discretion in certifying its judgment as final for appeal under Rule 54(b).

## IV.

We have now resolved the alleged jurisdictional defects Saks raised—standing and the judgment's certification—so we turn to Saks's substantive assertions. Saks alleges that the district court made a legal error by rejecting Saks's affirmative defenses and entering summary judgment in favor of Stratford. We review a district court's grant of summary judgment de novo, construing all facts and drawing all reasonable inferences in favor of Saks as the non-moving party. *See Barnes-Staples v. Carnahan*, 88 F.4th 712, 715 (7th Cir. 2023).

Saks asserted three defenses to liability: failure to mitigate damages, impossibility, and frustration of purpose. The district court found that none of these defenses had merit. It

determined that Saks could not assert failure to mitigate because Saks did not present any case in which a guarantor can assert failure to mitigate as a defense under Illinois law. It also found that the Illinois court-appointed receiver attempted to mitigate damages, which satisfied any duty to mitigate that might exist. Lastly, it found that Saks could not meet the legal elements of frustration of purpose or impossibility.

Because we conclude that Saks waived its right to assert any defenses under the plain language of the guaranty, we affirm the district court's judgment. *See O'Brien v. Caterpillar Inc.*, 900 F.3d 923, 928 (7th Cir. 2018) ("We may affirm on any ground supported in the record so long as it was adequately addressed below and the plaintiffs had an opportunity to contest the issue.").

Under Illinois law, courts evaluate guaranties and sureties using principles of contract law. *See, e.g.*, *People ex rel. Ryan v. Env't Waste Res., Inc.*, 335 Ill. App. 3d 751, 757 (2002) ("The fundamental principle of surety law is that the surety is bound by the terms of its contract."); *Blackhawk Hotel Assocs. v. Kaufman*, 85 Ill. 2d 59, 64 (1981) ("A guaranty contract is to be interpreted 'according to the standards that govern the interpretation of contracts in general.'" (quoting Restatement of Security § 88 (1941))). As with any contract, the parties to the guaranty select its terms, and "[w]here the terms of a guaranty are clear and unambiguous, they must be given effect as written." *Roth v. Dillavou*, 359 Ill. App. 3d 1023, 1028 (2005).

The guaranty established that Saks's liability as a guarantor "shall not be subject to any reduction, limitation, termination, *defense*, offset, counterclaim or recoupment" if CPS were to default on the lease or reject the lease through bankruptcy. CPS indeed defaulted on the lease in February 2018 and then

rejected the lease through bankruptcy in August 2018. Under that plain language, Saks waived its right to assert affirmative defenses to both the default and the rejection.

Our circuit has already implicitly found that this language waives affirmative defenses. In *Hovde v. ISAL Development LLC*, 51 F.4th 771 (7th Cir. 2022), we used the language at issue here to shed light on the meaning of a different guaranty agreement. The parties in *Hovde* disagreed over whether language providing that a guarantor's "obligations under this Guaranty shall be unconditional, irrespective of . . . any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor" waived the guarantor's right to assert affirmative defenses to liability. *Id.* at 775–76. We concluded that the language waived affirmative defenses as to the guarantor's *obligation* to the loan, but not to its *liability*. *See id.* at 777. In our analysis, we contrasted the language of the guaranty at issue there with the "more expansive language that courts frequently encounter in waivers, in which the language applies not only to defenses as to the obligation itself but also to defenses to liability or enforcement." *Id.* at 779. Among the waivers that we cited was the exact waiver in the very case before us: This guaranty states that "*the liability and obligation* of Guarantor . . . shall not be subject to any . . . defense." *Id.* (emphasis in original) (quoting *WEC 98C-3 LLC v. Saks, Inc.*, No. 20 C 4356, 2022 WL 474204, at *4 (N.D. Ill. Feb. 16, 2022)). Thus, we have little trouble concluding that, under the plain language of the guaranty Saks signed, it waived its right to assert affirmative defenses to liability.

Saks contends that it could not have waived its failure-to-mitigate defense because failure to mitigate is a statutory

defense. According to Saks, Illinois law requires a "clear waiver of a statutory right." But that is not exactly right. Illinois law provides that a party can waive statutory rights, "so long as the waiver is voluntary, knowing, and intentional." *Takiff Props. Grp. Ltd. #2 v. GTI Life, Inc.*, 2018 IL App (1st) 171477, ¶ 13. Saks agreed to the guaranty and, as a sophisticated party, Saks is "presumed to have understood the[] clear terms" of the guaranty. *Cincinnati Ins. Co. v. Leighton*, 403 F.3d 879, 887 (7th Cir. 2005).

The cases that Saks relies on, *Chemical Bank v. Paul*, 244 Ill. App. 3d 772 (1993), and *Gallagher v. Lenart*, 226 Ill. 2d 208 (2007), do not support its argument to the contrary. In *Chemical Bank*, an Illinois appellate court found that a guaranty stating "[t]he undersigned hereby warrants and represents that the undersigned has no defense, offset or counterclaim with respect to the Guaranty or the obligations of the undersigned thereunder" did not waive the implied covenant of good faith. 244 Ill. App. 3d at 781. But that holding applied *only* to the implied covenant of good faith. In fact, the court noted that "[g]uaranty agreements containing waivers of all defenses, including the duty to act in a commercially reasonable manner, have been upheld as validly binding." *Id.* A covenant of good faith is different because "fair dealing is implied into every contract, absent express disavowal." *Id.* In short, *Chemical Bank* instructs that the implied covenant of good faith is a special case that requires express waiver. Parties can waive other defenses with more general language.

*Gallagher*, a case about workers' compensation liens, does not support Saks's argument either. *See* 226 Ill. 2d 208. Gallagher was an employee of Rail Terminal Services who suffered an on-the-job injury when he collided with a truck

operated by Lenart. Following the accident, Gallagher pursued a workers' compensation claim against Rail Terminal and a personal injury suit against Lenart. The workers' compensation case settled, with the parties agreeing to a "full and final settlement of all claims under the Workers' Compensation Act" for injuries associated with the accident. *Id.* at 212. Gallagher then settled with Lenart, and Rail Terminal asserted a statutory right to impose a lien on that settlement under the Workers' Compensation Act. Gallagher argued that although the Workers' Compensation Act gives employers a statutory right to liens on workers' settlements with third parties, Rail Terminal had waived that right pursuant to the terms of *their* settlement. The Illinois Supreme Court disagreed. It determined that, given "the integral role the workers' compensation lien plays in the workers' compensation scheme . . . the waiver of a workers' compensation lien must be explicitly stated." *Id.* at 238.

We do not find *Gallagher* relevant for two reasons. First, the *Gallagher* court found that the settlement agreement did not waive a statutory right to collect on a judgment that arose from a different court proceeding. That is fundamentally different from the situation here, where the guaranty waived a statutory right to assert a defense against breach of the very contract it guarantees. Second, the *Gallagher* court based its reasoning on the central role the statutory right to a lien played in the workers' compensation scheme. Saks has provided no evidence that the Illinois statute establishing a landlord's duty to mitigate acts as a linchpin in any larger statutory scheme.

In sum, the plain meaning of the guaranty controls the outcome here. Saks waived its right to assert affirmative

defenses to liability. The district court's determination that Saks had no defense to liability was therefore correct.

## V.

Saks's final claim of error involves the interest rate the district court applied to the unpaid rent. The guaranty provision allows a late penalty based on "the maximum amount of interest permitted under applicable state law." The Illinois Interest Act, 815 ILCS 205, allows "the parties to stipulate or agree that an annual percentage rate of 9%, or any less sum, shall be taken and paid upon every $100 of money loaned or in any manner due." 815 Ill. Comp. Stat. 205/4. Saks argues, based on *Celotex Corp. v. Discount Roofing Materials, LLC*, 2012 IL App (1st) 110614-U, and *McGinley Partners, LLC v. Royalty Properties, LLC*, 2018 IL App (1st) 171317, that "maximum amount of interest" is ambiguous. Those cases do not support Saks's position. In both *Celotex* and *McGinley Partners*, the court declined to apply the 9% interest rate because it found that the statute authorizing the 9% interest rate did not apply to the transactions at issue. *Celotex Corp.*, 110614-U at ¶ 31; *McGinley Partners*, 171317 at ¶ 65. Here, Saks provides no evidence that Section 205/4 does not apply to real estate transactions. Therefore, Statute 205/4 applies, and the district court did not err in applying a 9% prejudgment interest rate to the unpaid rent.

For these reasons, we AFFIRM the district court's judgment.